# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

TRENT ALMETER,

      Plaintiff,

      v.                               Case No:4:23-CV-336

Present or former Florida Highway Patrol Troopers, WILLIAM YOUNG, NATHANIAL CABE, Sgt. MATTHEW RABUN, DAVE KERNER as the Executive Director of the Florida Department of Highway Safety and Motor Vehicles, the CITY OF PERRY FLORIDA, Chief Jamie Cruse, present or former Perry Police Officers TRACE CHAFFIN, JOEL MAILLY, and CHARLES "CHAS" MITCHELL,

      Defendants. )               JURY TRIAL DEMANDED

## COMPLAINT

NOW COMES Plaintiff, TRENT ALMETER, by his undersigned attorneys, and brings this action under 42 U.S.C. §1983 and the laws of the State of Florida to hold present or former Troopers WILLIAM YOUNG, NATHANIAL CABE, and Sgt. MATTHEW RABUN with the Florida Highway Patrol, DAVE KERNER as the Executive Director, of the Florida Department of Highway Safety and Motor Vehicles, the City of Perry, its policymaker, the Chief of Police,

1

JAMIE CRUSE, and present or former officers, TRACE CHAFFIN, JOEL MAILLY, CHARLES "CHAS" MITCHELL accountable for their unreasonable, unlawful, and malicious violations of the TRENT ALMETER's civil rights. (Collectively, the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

In the late afternoon of August 29, 2019, the Plaintiff, TRENT ALMETER, was viciously removed from his motel room by Defendants WILLIAM YOUNG, NATHANIAL CABE, TRACE CHAFFIN, JOEL MAILLY, and CHARLES "CHAS" MITCHELL. These Defendants, in violation of the Fourth Amendment to the United States Constitution illegally entered TRENT ALMETER's room, and while in the room maliciously assaulted and battered TRENT ALMETER, repeatedly striking him on his back and sides. The physical assault on TRENT ALMETER caused pain, several fractures to the spine, and numerous contusions. Defendant CABE, the 'handler' of a Florida Highway Patrol (FHP) attack trained police K-9, in violation of several provisions of FHP policy 3.02, commanded the attack dog, consistent with the dogs training, to

2

viciously bite, shake and hold the arm of TRENT ALMETER. Plaintiff, TRENT ALMETER suffered severe bites to the shoulder and arm because of the K-9 attack. TRENT ALMETER suffered other serious and permanent injuries.

After TRENT ALMETER was forcibly removed from his motel room, he was placed outside and left on a brick wall. TRENT ALMETER made constant statements that he had not done anything wrong, he reported that he was in severe pain, and he made repeated pleas for medical treatment. Defendants refused to provide medical care even though Emergency Medical Services (EMS) had responded to the Skylark Motel.

Defendant YOUNG realized that his 'assumption' that animated his behavior from the time of his arrival at the Skylark Motel - TRENT ALMETER was the driver of the Honda that had fled and crashed on Green Street, and faced with TRENT ALMETER's incessant claims of innocence and how he came to be at the Skylark Motel, evidently concluded that some further investigation might be prudent. Hoping to confirm his assumption, or at least refute TRENT ALMETER's constant assertions, YOUNG decided to view the

3

motel's video security system. An action YOUNG could have taken while securing the outside of room #15 of the Skylark Motel, thus ensuring a suspect didn't leave and everyone's constitutional rights were honored.

The video destroyed YOUNG's assumption. TRENT ALMETER had not arrived at the Skylark Motel by running through the woods and crossing a chest-deep creek from Green Street, the Honda crash site. The video confirmed TRENT ALMETER's story that he was a passenger in his friend's car. The vehicle TRENT ALMETER and his friend traveled in had broken down, repairs required an overnight stay to obtain parts, and an elderly gentleman had given them a ride to the Skylark Motel.

Instead of releasing TRENT ALMETER, Defendant YOUNG, with the approval of his supervisor, Defendant RABUN, and the acquiescence of Defendants CABE, CHAFFIN, MAILLY, and MITCHELL, arrested TRENT ALMETER without probable cause for Resisting Arrest Without Violence. Not only did Defendant's lack probable cause for the arrest, but Resisting Arrest Without Violence is not even a crime under the sworn facts YOUNG set forth in his

4

probable cause affidavit. Nor did the arrest have any connection with why Defendants had responded to the Skylark Motel.

Defendants came to realize that they had arrested TRENT ALMETER for a crime that did not exist under Florida law, without probable cause. Defendants refused to concede defeat. Defendants were intent on finding some justification for the beating and attack that had occurred in TRENT ALMETER's motel room.

Defendant YOUNG, after consulting with Defendant RABUN, concluded that perhaps the only way to conceal the numerous civil rights violations and other illegal actions of Defendants at the Skylark Motel would be to obtain an arrest warrant. The only way YOUNG could obtain an arrest warrant would be by misleading the State Attorney's office with sworn false, incomplete, and misleading information about the events at the Skylark Motel. This effort resulted in a warrant for TRENT ALMETER's arrest for two felony offenses. Defendant YOUNG and RABUN caused a second false arrest of TRENT ALMETER, a second posting of bond, and the obligation to retain counsel.

When the State Attorney's Office found out what really happened at the Skylark Motel during depositions all charges against TRENT ALMETER were dropped.

## JURISDICTION AND VENUE

1.      TRENT ALMETER's claims are brought under 42 U.S.C. §1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to TRENT ALMETER by the Constitution and laws of the United States, under 42 U.S.C. §1988, which authorizes the award of cost and attorney fees to prevailing Plaintiffs in actions brought under 42 U.S.C. §1988. TRENT ALMETER also brings pendant claims under Florida common and statutory law derived from a common nucleus of operative facts. All conditions precedent have occurred or been performed prior to bringing suit.

2.      This Court has jurisdiction 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1343 (civil rights claim jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

3.      Venue is proper under 28 U.S.C. § 1391(b). The acts and omissions giving rise to this complaint occurred in the State of

6

Florida and the events giving rise to the claims asserted herein occurred in the Northern District of Florida.

## PARTIES

4.      Plaintiff, TRENT ALMETER, is a citizen of the United States and a resident of Panama City Beach, Bay County, Florida, within the Northern District of Florida.

5.      Defendant, CITY OF PERRY, is, and was at all times material hereto, a Municipality created under the Laws of the State of Florida located in Taylor County, Florida within the Northern District of Florida. The City of Perry employs or employed the Defendant City of Perry Florida police officers. The current policymaker at the Perry Police Department is Chief of Police James Cruse.

6.      Defendants TRACE CHAFFIN, JOEL MAILLY, and CHARLES "CHAS" MITCHELL are present or former certified law enforcement officers employed by defendant CITY OF PERRY.

7.      Defendants WILLIAM YOUNG, NATHANIAL CABE, and SGT. MATTHEW RABUN are present or former certified law enforcement officers employed by the Florida Highway Patrol.

7

8.      DAVE KERNER is currently the Executive Director of the Florida Department of Highway Safety and Motor Vehicle, the state agency with administrative and policy making control over the Florida Highway Patrol.

9.      All of the foregoing officers employed by the Florida Highway Patrol at the times material to the complaint are sued in their individual capacities, and all acted under color of law by acting or purporting to act in the performance of official duties under state law in the scope of their employment in engaging in the actions alleged in this Complaint.

10.      All of the foregoing officers employed by the City of Perry, Florida, as law enforcement officers at all times material to the complaint are sued in both their personal and official capacities, and all acted under color of law by acting or purporting to act in the performance of official duties under state law in the scope of their employment in engaging in the actions alleged in this Complaint.

11.      The CITY OF PERRY is sued as the employer of the City of Perry officers and for maintaining a policy, custom, or practice that allowed city officers to violate TRENT ALMETER's civil rights.

12.     JAMES CRUSE is sued as the current policymaker and supervisor of the police officers employed by the City of Perry.

13.     DAVE KERNER is sued for state law claims in his capacity as the Executive Director of the Florida Department of Highway Safety and Motor Vehicle.

## INTRODUCTION

14.     On, or about, August 29, 2019, TRENT ALMETER had obtained a ride as a passenger from a female acquaintance in her car to travel to Perry Florida to cash his Veteran's disability check. On the way to the City of Perry the vehicle became disabled and repairs were going to require an overnight stay in Perry.

15.     TRENT ALMETER and the female acquaintance obtained a motel room in room #15 of the Skylark Motel in Perry Florida.

16.     TRENT ALMETER and the female acquaintance were digitally recorded on the motel security system being dropped off at the motel by an older gentleman who had given them a ride to the motel after the vehicle TRENT ALMETER and his friend left the vehicle they were traveling in for repairs.

9

17.     Trooper YOUNG, with the Florida Highway Patrol (FHP) was stationary in his patrol car facing North operating radar on U.S. 19 in Taylor County Florida.

18.     Trooper YOUNG observed a silver Honda traveling on U.S. 19, several lanes of travel away as part of a group of other vehicles traveling 55 to 60 mph.

19.     Trooper YOUNG only saw one person in the vehicle and was able to provide only a limited description of the driver.

20.     YOUNG decided to execute a traffic stop and had to cross "five lanes of travel" to get behind the Honda.

21.     YOUNG lost sight of the Honda when it turned onto Green Street and became involved in a single car accident.

22.     YOUNG came up to the scene of the accident and observed that no one was present in the vehicle.

23.     YOUNG had lost all visual contact with the driver and did not see anyone running from the area nor did he observe any other movement in the area.

24.     No evidence was found in the vehicle indicating that it had ever been occupied by TRENT ALMETER.

10

25.     A request for assistance was made to the City of Perry Police Department to bring out a K-9 tracking dog.

26.     When the City of Perry's K-9 unit did eventually arrive on the scene the dog was unable to pick up a track from the abandoned Honda.

27.     After the City of Perry's K-9 unit failed to find a track, a request was made to the Florida Department of Corrections (DOC) to assist with their K-9 tracking unit.

28.     When DOC's K-9 unit eventually arrived, the dog was unable to pick up a track near the car but did eventually alert on something in an adjacent tree line that law enforcement decided to follow.

29.     DOC's K-9 alert lead law enforcement across a creek that officers testified, at its deepest, was neck deep.

30.     The track ended at the rear of the Skylark Motel. The track did not lead to the front of the motel, nor did it lead to room 15.

31.     Over 90 minutes had elapsed from the accident until law enforcement arrived at the Skylark Motel.

11

32.      A City of Perry police officer reported that an inquiry to the Skylark Motel revealed that two people, a white male and a black female, had checked into room #15.

33.      Without a warrant, without consent, without any exigent circumstances, or any other legal justification law enforcement illegally entered room 15.

34.      TRENT ALMETER was laying on the bed in his rented motel room when law enforcement officers from the City of Perry and the Florida Highway Patrol illegally entered his room.

35.      Upon officers' illegal entry into TRENT ALMETER's motel room, they observed, but refused to recognize the significance of their observation, that TRENT ALMETER was in dry clothing wearing clean, white, socks. The officers were basing their conclusion that TRENT ALMETER was driving the Honda on the mere circumstance that he had recently checked into the Skylark Motel and the DOC K-9 track led through a creek (neck deep in spots) and terminated somewhere behind the Skylark Motel.

36.      Once illegal entry into the motel room was made, law enforcement officers CHAFFIN, MAILLY, and MITCHELL from the

12

City of Perry and Troopers YOUNG and CABE physically assaulted and repeatedly battered TRENT ALMETER.

37.      TRENT ALMETER denied all criminal wrongdoing to law enforcement. TRENT ALMETER specifically denied he was driving a silver Honda, or any other vehicle in the City of Perry that day and denied fleeing from YOUNG or any other officer. TRENT ALMETER attempted to explain to law enforcement why he was in the City of Perry, the automobile's mechanical problems, and why he had rented a room in the Skylark Motel.

38.      Defendant's ignored TRENT ALMETER's explanations.

39.      After forcibly removing TRENT ALMETER from his motel room law enforcement restrained TRENT ALMETER's movements and detained TRENT ALMETER outside his room.

40.      In violation of several provisions of FHP's Policy 3.02, *K-9 Deployment and Use*, Defendant CABE commanded his canine to enter room #15 and to attack and bite TRENT ALMETER as part of the on-going assault and battery.

41.      No law enforcement personnel requested Defendant CABE to command his K-9 to enter the motel room and attack TRENT ALMETER.

13

42.     The unnecessary and improper K-9 attack resulted in TRENT ALMETER suffering several bite wounds that needed emergency medical treatment.

43.     In addition to the bite wounds TRENT ALMETER suffered several spinal fractures, contusions, and other injuries.

44.     Defendants YOUNG, and CABE, and Defendants CHAFFIN, MAILLY, and MITCHELL refused to allow EMS personnel to provide necessary treatment for TRENT ALMETER's injuries.

45.     When supervisory personnel arrived, TRENT ALMETER was transported to the hospital where he received necessary medical treatment for the injuries he suffered in his motel room.

46.     YOUNG, after the illegal entry, the assault, battery, and K-9 attack but prior to the TRENT ALMETER's receiving medical treatment and transport to the hospital, viewed security video from the motel.

47.     YOUNG could have secured the room and viewed the video before the illegal entry and battery.

48.     The video established that TRENT ALMETER was truthful, he was dropped off at the Skylark Motel by an older

14

gentleman and was not the individual driving the Honda who fled from the accident site on Green Street.

49.    TRENT ALMETER had not committed any crime prior to law enforcement's illegal entrance into his room.

50.    TRENT ALMETER did not commit any crime after law enforcement's illegal entry into his motel room.

51.    To conceal the numerous violations of TRENT ALMETER's constitutional rights, including the battery, the K-9 attack, the illegal entry, and knowing they had severely injured TRENT ALMETER, law enforcement officers made a decision to arrest, without probable cause, TRENT ALMETER for Resisting an Officer Without Violence.

52.    Even if the facts law enforcement swore to in their filed affidavit were accepted as true, (which they are not) the arrest for Resisting an Officer Without Violence, would be unlawful, and thus without probable cause.

53.    TRENT ALMETER's arrest at the Skylark Motel was an unlawful restraint against his will; and the restraint was unreasonable under the circumstances.

54.    Defendants willfully failed to preserve exonerating video evidence from the Skylark Motel and failed to notify the State Attorney of the existence of this evidence.

55.    After TRENT ALMETER bonded out of jail on the illegal arrest for Resisting Arrest without Violence charge, Defendants, again knowingly and without probable cause, went to an Assistant State Attorney in the Third Judicial Circuit and provided false information about the events at the Skylark Motel and maliciously sought additional charges of Battery on a Law Enforcement Officer and Resisting an Officer with Violence.

56.    TRENT ALMETER's initial arrest for Resisting Officer Without Violence under Section 843.02 Florida Statutes was unlawful as there was no probable cause to believe TRENT ALMETER's actions constituted a crime.

57.    TRENT ALMETER's second arrest for Battery on a Law Enforcement Officer under section 784.07(2)(b), Florida Statutes, and Resisting Officer with Violence under Section 843.01 Florida Statutes, was based on the maliciously false and incomplete information provided to the Third Circuit State Attorney's Officer at

16

the direction of RABUN or other supervisors with the Florida Highway Patrol.

58.     During criminal discovery on the new charges that lead to TRENT ALMETER's second arrest, the Assistant State Attorney learned that law enforcement knew, prior to the first arrest, that TRENT ALMETER was not the individual law enforcement had been seeking for Fleeing or Eluding, Section 316.1935(3), Florida Statutes, and that law enforcement had not been truthful in the application for an arrest warrant.

59.     All prosecution has ended without a conviction.

## BACKGROUND ALLEGATIONS

60.     Defendants CHAFFIN, MAILLY, and MITCHELL have all failed to comply with their affirmative obligation pursuant to Section 943.1718, Florida Statutes and under GO-43 to utilize their assigned Body Worn Cameras (BWC). A failure to comply with the policy Florida law requires law enforcement agencies to adopt is a violation of the law.

    A.     The City of Perry police department requires "[t]he BWC is to be worn at all times." GO-43.040(2). Perry officers testified that they did not wear their assigned BWCs.

17

B.      Patrol Supervisors have a responsibility to "[e]nsure all members under their supervision have their BWC properly affixed, charged and in service . . . while on duty." This requirement was not met.

C.      Among other BWC responsibilities, officers shall "[e]nsure that the BWC assigned for use is properly charged, properly affixed, in service." GO-43.040(3). Not one of the officers who responded to the scene complied with this provision.

D.      The policy sets out an extensive list of activities when use of the BWC is mandatory. Some of those situations include; Crash investigations, GO-43.050(2)c., Arrest, GO-43.050(2)f., Physical or verbal confrontations or use of force, GO-43.050h., Crimes in progress, GO-050(2)l., and Responding to an in-progress call, GO-43.050(2)m. The statutorily required policy sets out numerous other situations that would trigger the mandatory use of BWCs in the interaction the City of Perry officers had with TRENT ALMETER.

18

E.    The total failure of Defendants CHAFFIN, MAILLY, and MITCHELL to use their BWC is due to a lack of training tantamount to the intentional destruction of evidence and all reasonable inferences should be presumed against the Defendants CHAFFIN, MAILLY, and MITCHELL.

61.    The Florida Highway Patrol utilizes Mobile Video/Audio Recordings (MVR) and Body Worn Cameras (BWC) and has also adopted a policy as required by Florida law concerning when the MVRs and BWCs will be used, the storage of digital recordings, and the procedure for terminating use of the BWC. (Florida Highway Patrol Policy Manuel, Policy 17.22)

62.    Every aspect of this case, as reported by the FHP troopers involved, was required to be digitally recorded by MVRs and BWCs. Those include: 'Traffic stop,' 17.22.05B.1.c.(1), 'Disabled vehicle,' 17.22.05B.1.c.(2), 'Emergency Response,' 17.22.05B.1.c.(3), 'Pursuit,' 17.22.05B.1.c.(4), or 'Any other law enforcement encounter, 17.22.05B.1.c.(5).

63.    Defendants YOUNG, CABE, RABUN and the Department of Highway Safety and Motor Vehicles all deny the existence of the MVR or BWC recordings.

64.    No MVR or BWC footage has been produced.

65.    Defendants offer various reasons for failing to comply with the BWC policy as required by law. The failure to properly utilize and preserve the required digital evidence, in toto, by each of the Defendants, is tantamount to the purposeful destruction of evidence.

## DEFENDANT'S MISCONDUCT

66.    Defendants deprived TRENT ALMETER of rights secured by the Constitution and the laws of the United States, the State Constitution, and state laws when they entered TRENT ALMETER's motel room,

67.    Defendants deprived TRENT ALMETER of rights secured by the Constitution and the laws of the United States, the State Constitution, and state laws when they falsely imprisoned TRENT ALMETER, unlawfully detaining him against his will, without legal authority or color of authority and depriving him of his liberty physically restraining him while in his motel room and outside his room after forcible removing him from his motel room.

68.     TRENT ALMETER's detention in his room, and outside his room, was intentional, unreasonable, and not warranted by the circumstances.

69.     Defendants deprived TRENT ALMETER of rights secured by the Constitution and the laws of the United States, the State Constitution, and state laws when they falsely arrested TRENT ALMETER on two separate days in relation to this incident in violation of the Fourth Amendment of the United States Constitution and in violation of Florida's Constitution.

70.     Defendants deprived TRENT ALMETER of rights secured by the Constitution and the laws of the United States, the State Constitution, and state laws when they maliciously prosecuted TRENT ALMETER and subjected him to an unlawful, illegal, and excessive detention in violation of his Fourth Amendment rights.

71.     Defendants YOUNG, CABE, MITCHELL, CHAFFIN, and MAILLY deprived TRENT ALMETER of rights secured by the Constitution and the laws of the United States, the State Constitution, and state laws when they used excessive force during

21

an arrest when they assaulted, battered, and had TRENT ALMETER attacked by a trained police dog in his motel room.

72.    Defendant, the CITY OF PERRY, deprived TRENT ALMETER of rights secured by the Constitution and the laws of the United States, the State Constitution, and state laws when they adopted policies or procedures that allowed officers they employed to violate the constitutional rights of individuals.

73.    Defendant CABE, deprived TRENT ALMETER of rights secured by the Constitution and the laws of the United States, the State Constitution, and state laws when he, without request from other officers and in violation of Policy 3.02 of the Florida Highway Patrol commanded his assigned canine to bite and attack TRENT ALMETER in his motel room resulting in open wounds in need of medical treatment.

74.    Defendants deprived TRENT ALMETER of rights secured by the Constitution and the laws of the United States, the State Constitution, and state laws when they delayed necessary medical care by refusing to allow EMS to provide treatment to TRENT ALMETER.

22

75.     Knowing that TRENT ALMETER was not the individual that had fled from Defendant YOUNG over 90 minutes earlier, and in an illegal attempt to provide some justification for the illegal actions, Defendant YOUNG, with the agreement of RABUN and CABE, and without objection from Defendants CHAFFIN, MAILLY, and MITCHELL, arrested TRENT ALMETER without probable cause for an offense that could not exist under the facts law enforcement swore to in their affidavit filed with the court.

76.     A supervisor with authority over Defendant YOUNG reviewed the reports concerning the actions of that took place in TRENT ALMETER's motel room, and recognized the misconduct (illegal entry, assault, battery, canine attack, false arrest, denial of medical treatment) could not be justified by the illegal arrest for Resisting Arrest without Violence.

77.     Defendant YOUNG deprived TRENT ALMETER of rights secured by the Constitution and the laws of the United States, the State Constitution, and state laws when he, as instructed by his supervisors, maliciously and falsely initiated criminal charges of Battery on a Law Enforcement Officer, Section 784.07, Florida Statutes, and Resisting Arrest with Violence,

23

Section 843.01, Florida Statutes, when he knew, and any reasonable officer would know, that there was not probable cause to believe the charges were justified by the facts and the law.

78.    Supervisory officers, such as Defendant RABUN, employed by the Florida Highway Patrol, Department of Highway Safety and Motor Vehicles, deprived TRENT ALMETER of rights secured by the Constitution and the laws of the United States, the State Constitution, and state laws when they instructed or encouraged or allowed Defendant YOUNG to use misrepresentations and falsehoods, to mislead the Third Circuit's State Attorney's Office to obtain an arrest warrant criminally charging TRENT ALMETER with Battery on a Law Enforcement Officer and Resisting Arrest with Violence.

79.    Defendant YOUNG, RABUN, and the DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES each knew that without the false and misleading information, knowingly provided by the Defendants, a warrant would not have issued.

80.    DAVE KERNER, Executive Director of the Department of Highway Safety and Motor Vehicles, deprived TRENT ALMETER of rights secured by the State Constitution, and state laws, when

24

the Department failed to ensure proper training and supervision of the Departments officers and supervisors.

81.     The Fourth Amendment rules concerning warrantless entry, warrantless search, or a warrantless seizure are clearly established law and the Defendants either knew, or should have known, that their actions without probable cause were in violation of the clearly established law.

82.     All these acts were done knowing that the use of misleading or false information to obtain a warrant is unreasonable and in violation of TRENT ALMETER's protected rights.

83.     TRENT ALMETER was arrested a second time and was required to post a second bond on the charges contained in the maliciously obtained warrant.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Fourth Amendment – Illegal Search – Entry into Motel Room
(Against Defendants Young, Cabe, Chafin,
Mailly, Mitchell and the City of Perry)

84.     TRENT ALMETER re-alleges and incorporates by reference paragraphs 1 – 83.

25

85.    Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL deprived TRENT ALMETER of rights secured by the Constitution and the laws of the United States, the State Constitution, and state laws when they entered TRENT ALMETER's motel room without legal justification.

86.    The City of Perry, deprived TRENT ALMETER of rights secured by the Constitution and the laws of the United States, the State Constitution, and state laws when they adopted, either formally or informally, that allowed, or failed to prevent, Perry Police Officers from violating individuals' constitutional rights.

87.    "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Reed v. State, 944 So. 2d 1054, 1058 (Fla. 4th DCA 2006)

88.    "[A] nonconsensual entry into a home, *a motel room*, or other residence constitutes a search. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) Holloman v. State, 959 So. 2d 403, 406 (Fla. 2d DCA 2007) (Emphasis Added)

89.    Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL entered room #15 of the Skylark Motel searching for an

26

individual who had been driving a silver Honda automobile and had fled on foot after crashing the car on Green Street.

90.     No warrant authorized the entry, nor did any exception to the warrant requirement exist to justify the entry.

91.     No consent. Law enforcement officers commanded TRENT ALMETERS African American friend to exit the room and then they immediately entered the room and began battering TRENT ALMETER to illegally arrest him.

92.     No exigent circumstances to prevent the destruction of evidence. Officers who entered the room were not seeking discrete pieces of evidence such as drugs that they had probable cause to believe might be present in the room that could be destroyed. Defendants claimed to have been seeking an adult male. The exterior of the motel room could have been secured and a warrant obtained.

93.     No emergency. Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL had no objectively reasonable grounds at the time of the entry into the motel room to believe that there was an emergency at hand and there was an immediate need to protect others or themselves from serious harm.

27

94.     TRENT ALMETER was not the individual law enforcement claims to have been seeking, and Defendants had no reasonable basis to believe TRENT ALMETER was the driver of the Honda.

95.     The actions of Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL in entering TRENT ALMETER's motel room violated the constitutional rights guaranteed to TRENT ALMETER by the Fourth Amendment of the United States Constitution. Defendant's actions were not in good-faith and were in violation of clearly established law.

96.     As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the TRENT ALMETER has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

**SECOND CLAIM FOR RELIEF**
**Fourth Amendment – False arrest**
(Against Defendants Young, Rabun, Cabe, Chafin, Mailly, and Mitchell, - Arrest and detention in motel room)

28

97. TRENT ALMETER re-alleges and incorporates by reference paragraphs 1 – 96.

98. Defendants YOUNG, RABUN, CABE, CHAFIN, MAILLY, and MITCHELL deprived TRENT ALMETER of rights secured by the Constitution and the laws of the United States, the State Constitution, and state laws when they falsely imprisoned TRENT ALMETER, unlawfully detaining him against his will, without legal authority or color of authority and depriving him of his liberty physically restraining him while in his motel room and outside his room after forcibly removing him from his motel room.

99. Defendant YOUNG, upon arriving at the Skylark Motel, unreasonably assumed, and without probable cause, that TRENT ALMETER was the driver of the Honda that he had pursued over 90 minutes earlier.

100. Acting without probable cause, based on a false assumption, Troopers with the Florida Highway Patrol; YOUNG and CABE, and officers with the City of Perry Police Department CHAFIN, MAILLY, and MITCHELL entered room #15 of the Skylark

29

Motel, without exigent circumstances and without a warrant, to arrest TRENT ALMETER for fleeing and attempting to elude.

101.    Defendants YOUNG and CABE, and officers with the City of Perry Police Department CHAFIN, MAILLY, and MITCHELL upon entry into the room immediately and violently restrained TRENT ALMETER, battered TRENT ALMETER, and allowed TRENT ALMETER to be attacked by a police trained K-9.

102.    After the attack on TRENT ALMETER in his motel room when he was confined to a brick wall without medical treatment, Defendant YOUNG, learned that TRENT ALMETER was not the individual who fled from him in the Honda, and knowing that he and other Defendants had assaulted, battered, and allowed a trained police dog to attack TRENT ALMETER, causing serious injuries, decided to arrest TRENT ALMETER for the crime of Resisting Arrest Without Violence.

103.    Resisting an illegal arrest without violence is not a crime in Florida.

104.    Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL violated TRENT ALMETER's Fourth Amendment rights by subjecting him to an unreasonable seizure in his motel room.

30

Defendants unreasonably and violently seized, attacked, and detained TRENT ALMETER in his motel room without probable cause to believe he was involved in a crime.

105.    Defendant CITY OF PERRY violated TRENT ALMETER's Fourth Amendment rights by maintaining a policy, custom, or practice that allowed city officers to violate TRENT ALMETER's civil rights.

106.    Defendant RABUN directed, approved, and authorized TRENT ALMETER's unconstitutional arrest; he knowingly failed to prevent Defendant YOUNG and CABE from violating TRENT ALMETER's Fourth Amendment rights; and knowingly disregarded the fact that TRENT ALMETER's illegal arrest and subsequent incarceration would be the obvious consequences of his actions.

107.    "The law is well settled that the legality of the arrest is an element of the offense of resisting arrest without violence." State v. Espinosa, 686 So. 2d 1345, 1347 (Fla. 1996). Or stated alternatively, the TRENT ALMETER had an absolute right to resist an unlawful arrest without violence. *See, e.g., Milliron v. State*, 274 So. 3d 1173, 1175 (Fla. 1st DCA 2019 quoting *B.D.H. v. State*, 903 So. 2d 390, 391 (Fla. 3d DCA 2005) ("[T]he crime of resisting an

31

officer *without* violence requires proof that the arrest was lawful.")
*Lobb v. State,* 290 So. 3d 591, 596 (Fla. 2d DCA 2020) (Deputy . . .
not executing a legal duty when she grabbed Lobb's wrist to take
her into protective custody. Hence, Lobb was legally permitted to
resist arrest without violence.) *C.W. v. State,* 76 So. 3d 1093, 1096
(Fla. 3d DCA 2011) (If an arrest is not lawful, then a defendant
cannot be guilty of resisting it ... the common law rule still remains
that a person may lawfully resist an illegal arrest) *Lu Jing v. State,*
316 So. 3d 724, 730 (Fla. 4th DCA 2021), *review denied,* SC 21-
884, 2021 WL 3234768 (Fla. July 29, 2021) (Importantly, a person
retains a right [at common law] to resist an unlawful arrest ...
without force) V.L. v. State, 790 So. 2d 1140, 1143 (Fla. 5th DCA
2001) (An essential element of the offense of resisting a law
enforcement officer without violence is that the arrest must be
lawful.) *M.J.R. v. State,* 715 So.2d 1103, 1103 (Fla. 5th DCA 1998).
(A warrantless non-emergency arrest of a suspect in his or her own
home is presumptively unlawful.)

108.    As a direct and proximate result of the Defendants'
unreasonable and unlawful actions, TRENT ALMETER has suffered
and continues to suffer substantial past and future damages, both

32

compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

**THIRD CLAIM FOR RELIEF**
**False Arrest – Second Arrest on Warrant**
**Malicious Prosecution – Punitive Damages**
(Against Defendants Young and Rabun)

109.   TRENT ALMETER re-alleges and incorporates by reference paragraphs 1 – 108.

110.   Defendant YOUNG with the consent and knowledge of his supervisor RABUN, made perjurious or recklessly false statements in support of obtaining an arrest warrant for TRENT ALMETER.

111.   Perjurious or recklessly false statements in support of an arrest warrant is a violation of the Constitution which results in liability under section 1983[1].

112.   Defendant YOUNG, after learning that TRENT ALMETER could not be guilty of the crime of Resisting Arrest

---

[1] Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971)

Without Violence went to the Office of the State Attorney, Third Circuit, to obtain an arrest warrant for TRENT ALMETER's arrest for other crimes.

113. In seeking the arrest warrant YOUNG failed to comply with the Fourth Amendment requirement of making a truthful factual showing in the affidavit or testimony used to establish probable cause.

114. Defendant YOUNG's false testimony or affidavit to the Third Circuit State Attorney's Office was either known, or should have been known, to Defendant RABUN.

115. Defendant RABUN was present at the Skylark Motel, knew what had happened at the motel, and knew, or should have known, that the only way an arrest warrant for Battery on a Law Enforcement Officer, or Resisting Arrest with Violence could be obtained would be through false, misleading, or incomplete testimony to the State Attorney's office to secure an application for an arrest warrant.

116. Defendant YOUNG and RABUN contemplated that the new and additional criminal acts would conceal the assault, battery, and false arrest of TRENT ALMETER.

34

117.    Defendants YOUNG and RABUN knew, or had reason to know, that the false, incomplete, or misleading information they provided to the State Attorney's office to obtain the arrest warrant for a second arrest was material and would be used to mislead a judge on a finding of probable cause.

118.    Defendants YOUNG and RABUN made false factual assertions with reckless disregard for the truth when, viewing all the evidence, the officers would have serious doubts as to the truth of the statements or had obvious reasons to doubt the accuracy of the information reported about what happened after they made illegal entry into room 15 of the Skylark Motel.

119.    Defendants YOUNG and RABUN omitted key facts that "any reasonable person would have known a judge would wish to have brought to his or her attention before being asked to sign an arrest warrant." Those facts would include, but not be limited to:

a.    The TRENT ALMETER's actions and degree of passive resistance at the time Defendants illegally entered room 15.

b.    Statements made by both the TRENT ALMETER and the Defendants after they entered room 15.

35

c.      That the entry into room #15 was made without, without a warrant, without exigent circumstances, without consent, and without any other lawful reason to enter the room by Defendants.

d.      The significant passage of time (over 90 minutes) between the initial sighting of the silver Honda by Defendant YOUNG and the other officers arriving at the Skylark Motel.

e.      The security video of the Skylark Motel that completely exonerated TRENT ALMETER from any criminal wrongdoing that Defendant YOUNG had viewed prior to allowing EMS to provide TRENT ALMETER necessary medical treatment.

f.      That law enforcement found the vehicle TRENT ALMETER had traveled from Tallahassee to Perry in was found where TRENT ALMETER had told them it would be.

g.      Defendant YOUNG asked the Perry Police Department to do forensics on the Honda and no evidence tying TRENT ALMETER to the Honda was found.

h.      The willful failure to use body cameras as required by law, or the destruction of any of the FHP or City of Perry officers' body camera recordings, which was mandated by

36

Section 943.1718 Florida Statutes and the agency policies adopted as required by law.

i.      The dry, clean, white socks and dry clothing of TRENT ALMETER when Defendants testified that they "had tracked" the driver of the fleeing Honda through a creek that was chest deep.

120.    The Defendants, YOUNG and RABUN knowing, or having reason to know, that they materially misled a magistrate on the basis for a finding of probable cause, have lost any claim to the shield of qualified immunity.

121.    A warrant that appears valid on its face is invalid if the officer lied to the judge to get it.

122.    As a direct and proximate result of the Defendants YOUNG's and RABUN's unreasonable and unlawful actions, the TRENT ALMETER has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

123.    In addition, because Defendants YOUNG's and RABUN's acted with malice or evil intent, or with reckless or callous indifference to the TRENT ALMETER's federally protected rights an award of punitive damages is appropriate to the fullest extent permitted by law. *Smith v. Wade*, 461 U.S. 30 (1983).

124.    Further, Defendants YOUNG's and RABUN's actions were "motivated solely by unreasonable financial gain" to avoid civil and personal liability. Both YOUNG and RABUN knew, or should have known, that the misleading, incomplete, false testimony or affidavit to the Assistant State Attorney, would result in a false arrest with the certainty that a false arrest would result in injury to TRENT ALMETER entitling TRENT ALMETER to punitive damages. Section 768.73, Florida Statutes.

**FOURTH CLAIM FOR RELIEF**
**State law Claim – False Arrest**
**Malicious Prosecution**
(Against Defendant Department of Highway Safety and Motor Vehicles Dave Kerner as Executive Director and Policymaker)

125.    TRENT ALMETER re-alleges and incorporates by reference paragraphs 1 – 124.

126.    That Defendant Florida Department of Highway Safety and Motor Vehicle and Dave Kerner as executive director, owed a

38

duty to TRENT ALMETER to supervise and train members of the Florida Highway Patrol, including Defendants YOUNG and RABUN.

127. The defendant breached this duty by failing to adequately train and supervise YOUNG and RABUN.

128. That as a direct and proximate result of the breach of this duty, TRENT ALMETER has suffered harm. These harms include: 1) suffered conscious pain and suffering both in the past and future, 2) incurred medical expenses in the past and will incur future medical expenses, 3) suffered mental and emotional sorrow and anguish, 4) suffered permanent physical injuries and disfigurement, and 5) has sustained other damages.

### FIFTH CLAIM FOR RELIEF
### Use of Excessive Force-Punitive Damages
(Against Defendants Young, Rabun, Cabe, Chafin, Mailly, Mitchell, and The City of Perry)

129. TRENT ALMETER re-alleges and incorporates by reference paragraphs 1 – 128.

130. As described above, Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL used excessive force against TRENT ALMETER without provocation and without legitimate justification.

131.    Defendant RABUN failed to stop or report the unprovoked and unjustified excessive use of force against TRENT ALMETER.

132.    The actions of Defendants YOUNG, CABE, CHAFIN, MAILLY, MITCHELL and RABUN were performed under color of state law and violated TRENT ALMETER's rights under the Fourteenth Amendment to the United States Constitution.

133.    Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL's actions were not taken in good-faith and were in violation of clearly established law.

134.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, TRENT ALMETER has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

135.    The conduct of Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL was willful and exhibited a flagrant disregard for TRENT ALMETER's federally rights therefore an award

40

of punitive damages is appropriate to the fullest extent permitted by law. *Smith v. Wade*, 461 U.S. 30 (1983).

**SIXTH CLAIM FOR RELIEF**
**Deliberate Indifference to Medical Needs**
**-Punitive Damages**
(Against Defendants Young, Cabe,
Chafin, Mailly, and Mitchell)

136.    TRENT ALMETER re-alleges and incorporates by reference paragraphs 1 – 135.

137.    As described above, Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL failed to ensure that TRENT ALMETER received prompt and adequate medical care subsequent to the beating he received on August 29, 2019.

138.    The actions of Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL exhibited deliberate indifference to TRENT ALMETER's serious medical needs, were performed under color of state law, and violated TRENT ALMETER's rights under the United States Constitution.

139.    As a direct and proximate result of the actions of Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL in failing to ensure that TRENT ALMETER received prompt and

41

adequate medical care, TRENT ALMETER was subjected to increased pain and the threat of serious physical injury.

140.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the TRENT ALMETER has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

141.    The conduct of Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL was willful and exhibited a flagrant disregard for TRENT ALMETER's federally protected rights therefore an award of punitive damages is appropriate to the fullest extent permitted by law. *Smith v. Wade*, 461 U.S. 30 (1983).

## SEVENTH CLAIM FOR RELIEF
### Monell Claim
(Against City of Perry)

142.    TRENT ALMETER re-alleges and incorporates by reference paragraphs 1 – 141.

143.    The Perry police Department is a law enforcement agency in the City of Perry, Taylor County, Florida.

42

144.    The Chief of the Perry Police Department is the 'policymaker' with final policymaking authority with respect to the Perry Police Department as a law enforcement agency.

145.    In the instance cited above, no person or law enforcement officer was in imminent danger and no exigent circumstances existed.

146.    At least three officers, employed by the City of Perry, without hesitation, went into TRENT ALMETER's motel room without a warrant, without any legal justification. Once in the room all three officers immediately began to assault and batter TRENT ALMETER's back and sides.

147.    None of the officers from the City of Perry Police Department took any action to prevent the needless and vicious attack on the TRENT ALMETER.

148.    None of the City of Perry Police officers objected or took any action to prevent the illegal K-9 attack on TRENT ALMETER.

149.    None of the City of Perry Police officers objected to or took any action to stop the illegal arrest of TRENT ALMETER. The arrest for the charged crime was without probable cause and under

43

the facts known to the City of Perry Police officers it was legally impossible for TRENT ALMETER to have committed the alleged crime.

150.    Defendant City of Perry ratified the actions of the officers by attempting to conceal the illegal actions of Defendants CHAFIN, MAILLY, and MITCHELL by not enforcing the statutory required policy of concerning the use of body worn cameras.

151.    When asked about their conduct in illegally entering the room, in battering TRENT ALMETER, in denying TRENT ALMETER medical care after an attack by a Florida Highway Patrol police dog, the officers responded they were just "helping out the FHP Troopers."

152.    "Helping out troopers" is not a legal justification for the actions the City of Perry Police officers took. The Actions the City of Perry Police officers took on August 29, 2019, establishes that the constitutional deprivation suffered by TRENT ALMETER flowed from an official policy or a custom of the City of Perry and that the policy or custom was 'the moving force of the constitutional violation. *Monell v. Department of Social Services of New York*, 436 U.S. 658, (1978).

44

153.     Municipal liability can attach under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, (1986). If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under *Monell. See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

154.     The City of Perry ratified the Officer's actions at the Skylark Motel by refusing to take any corrective action and failing to discipline any of the officers who violated TRENT ALMETER's Constitutional rights.

155.     As a direct and proximate result of the City of Perry's Police Department's customs, patterns, practices, and/or procedures, as stated herein above, the TRENT ALMETER's rights guaranteed to him by the Fourth Amendment of the United States Constitution were violated.

156.     As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the TRENT ALMETER has

45

suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

157.    Pursuant to Monell v. Department of Social Services of New York, 436 U.S. 658 (1978), the City of Perry and the Perry Police Department, through its policymaker, Defendant Cruse (and possibly other policymakers whose identities are not yet known) is liable for the harms and losses sustained by TRENT ALMETER.

**EIGHTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress – Punitive Damages**
(State Law Claim - Against Defendants Young, Cabe, Chafin, Mailly, and Mitchell)

158.    TRENT ALMETER re-alleges and incorporates by reference paragraphs 1 – 157.

159.    By entering TRENT ALMETER's motel room and viciously beating TRENT ALMETER in his motel room Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL engaged in actions that were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

46

160.    Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL acted with the intent to inflict emotional distress or acted recklessly when it was certain or substantially certain that emotional distress would result from their outrageous conduct.

161.    Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL caused TRENT ALMETER emotional distress as he was beaten for no reason.

162.    The emotional distress TRENT ALMETER experienced was so severe, no reasonable person could expect to endure it.

163.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the TRENT ALMETER has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

164.    The actions of Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL against the TRENT ALMETER were carried out with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others,

47

thereby justifying an award of punitive damages to the fullest extent permitted by law.

### NINTH CLAIM FOR RELIEF
### Battery
(Against Defendants Young, Cabe,
Chafin, Mailly, and Mitchell)

165.    TRENT ALMETER re-alleges and incorporates by reference paragraphs 1 – 164.

166.    As set forth above YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL illegally entered TRENT ALMETER's motel room and once in the room, without provocation, assaulted, battered, and had TRENT ALMETER attacked by a trained police attack K-9.

167.    TRENT ALMETER was severely injured suffering contusions, fractures in his spine, and severe and painful dog bites.

168.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the TRENT ALMETER has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

48

**WHEREFORE,** the Plaintiff, TRENT ALMETER, demands judgment against the Defendants for:

a) Compensatory damages for all past and future economic losses and expenses incurred by the TRENT ALMETER as a result of the Defendants' misconduct;

b) General damages for all past and future physical pain, mental suffering, and emotional distress suffered by TRENT ALMETER;

c) Punitive damages to the fullest extent permitted by law;

d) Pre-judgment and post-judgment interest;

e) Declare that the Defendants' acts, taken in their official capacities, as alleged above, violate the Fourth and Fourteenth Amendment to the United States Constitution;

f) Declare that the Defendants' acts, taken in their individual capacities, as alleged above, violate the Fourth and Fourteenth Amendments to the United States Constitution;

g) Immediately terminate Defendants YOUNG, CABE, CHAFIN, MAILLY, and MITCHELL;

49

h) Enjoin Defendants from engaging in hiring practices that result in the hiring of police officers without proper vetting or review;

i) Order the Defendants to adopt and implement policies, training, accountability systems, and practices to remedy the constitutional and statutory violations described herein;

j) Costs incurred in this action and reasonable attorney fees under 42 U.S.C. §1988; and

k) Such other further specific and general relief as may become apparent from discovery as this matter matures for trial.

## DEMAND FOR JURY TRIAL

The Plaintiff, TRENT ALMETER, demands trial by jury of all matters so triable.

50

Respectfully submitted this 4 day of August, 2023.

/s/Kevin Alvarez
Kevin R. Alvarez
Law Office of Kevin Alvarez P.A.
522 East Park Ave, Suite 100
Tallahassee, Florida 32301
FBN: 88527
Email: kevinalarezesq@gmail.com
Phone #: 850-559-0050

Paul M. Hawkes
15210 Mahan Drive
Tallahassee, FL 32309
FBN : 564802
Email : Hawkes.paul@gmail.com
850-212-3067
ATTORNEYS FOR PLANTIFF TRENT ALMETER

51