# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

TRENT ALMETER,

      Plaintiff,

        v.                       Case No:  4:23-CV-336-RH-JFM

WILLIAM YOUNG, NATHANIAL CABE,
MATTHEW RABUN; DAVE KERNER, in his
official capacity as the Executive Director of the
Florida Department of Highway Safety and
Motor Vehicles; the CITY OF PERRY,
FLORIDA; TRACE CHAFFIN, JOEL
MAILLY, and CHARLES "CHAS"
MITCHELL,

Defendants.

_____/

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

Plaintiff Trent Almeter, pursuant to Fed. R. Civ. P. 56(b), and in the manner required by Rules N.D. Fla. Loc. R. 7.1, and 56.1(a) moves this court for the entry of partial summary judgment in his favor as to Defendant's liability on Count I, Fourth Amendment violation for illegal entry into Mr. Almeter's motel room, and Count II, False Arrest.

There are, for purposes of this Motion[1], no disputed material facts, and the Plaintiff is entitled to Partial Summary Judgement on those undisputed facts as to liability on the above-referenced counts as a matter of law[2].

## NATURE OF ACTION

Plaintiff filed this action claiming that Defendant Young, and Defendant Cabe, employed as sworn law enforcement officers by the Florida Highway Patrol,[3] violated Plaintiff's Fourth Amendment rights when they entered his Motel room,[4] arrested Plaintiff, for resisting arrest without violence,[5] used excessive force in making that illegal arrest, which resulted in the fracture of Plaintiff's back in 4 places,[6] commanded the K-9 to bite Plaintiff twice, and committed Battery as that offense is defined in Florida law.[7] Defendant Rabun lead and directed a conspiracy to cover-up these illegal acts with Defendant Young and Defendant Cabe and failed to intervene to prevent any of these actions.

---

[1] For purposes of this Motion only, Plaintiff presents all fact issues in the light most favorable to the Defendants. Darruthy v. Pastor, 361 F.3d 1080 (11th Cir. 2002)

[2] All exhibits cited are attached to this filing, ECF No. 75.

[3] Amended Complaint [DOC 18]

[4] Amended Complaint [DOC 18]

[5] Exhibit F Defendant Young's sworn probable cause statement in first arrest report page 3 of 4. Defendant Young wrote that the violation was for 'obstruction' because Plaintiff failed to comply with commands given by officers.

[6] See Exhibit L image of Plaintiff's back.

[7] §784.03(1)(a)1, Florida Statutes.

2

## STATEMENT OF MATERIAL FACTS

Plaintiff Trent Almeter, submits this statement of material facts as to which there is no genuine issue to be tried:

### Plaintiff's Trip to Perry

Plaintiff is a disabled Naval veteran who receives a monthly disability payment, but he had lost his debit card. Without his debit card he had no access to his monthly disability money.[8] To obtain his payment Plaintiff had to go to his bank in Perry and arranged to make the trip early-afternoon on August 29, 2019.[9] Plaintiff arranged a ride with a woman he had met the night before who provided transportation to individuals for compensation.[10]

The woman is 'an elderly black woman'[11] named Alfreda Regina Styles.[12] Plaintiff paid the elderly black woman $50 and agreed to buy her lunch for the ride.[13]

The automobile Plaintiff was traveling as a passenger in became disabled and repairs required an unanticipated overnight stay in Perry at the Skylark

---

[8] Ex. A Deposition of Plaintiff, at pg. 54, lines 4-7.
[9] Id. at pg. 53, lines 2-11.
[10] Id. at pg. 54, lines 19-24.
[11] Id. at pg. 55, lines 12-13.
[12] Ex. F Defendant Young's First Arrest Report (4-page report) at 3, ¶ 2.
[13] Ex. A Deposition of Plaintiff, at pg. 55, lines 7-9.

3

Motel.[14] Plaintiff rented his room at the Skylark Motel and paid cash for the room.[15] Plaintiff checked into his room shortly before 6 pm on August 29, 2019.[16]

### Defendant Young's High-Speed Pursuit

Defendant Young is a trooper with the Florida Highway Patrol and was the 'Felony Member' of a Criminal Interdiction Unit (CIU) team.[17] On August 29, 2019, Defendant Young was working in Taylor County.[18] Young observed a gray or silver Honda traveling westbound on US Highway 27 that he became suspicious of the driver's reactions when it drove past by him in a group of three cars at 55-60 MPH.[19] Defendant Young saw only one person in the car – the driver – "there was no other passenger in the vehicle."[20] Because he was suspicious, Defendant Young 'ran' the 'tag' of the Honda, and the tag came back as 'stolen.'[21]

---

[14] Id. at pg. 58, lines 2-6. See also Ex. E, First FHP Incident Report, (9 pages) 'Initial Narrative by Defendant Young at pg. 7 ¶ 3.
[15] Ex. A Deposition of Plaintiff, at pg. 68, lines 14-18. See also Ex. F Defendant Young's First Arrest Report, at pg. 2, ¶ 2.
[16] Ex. A Deposition of Plaintiff, at pg. 70, lines 1-2.
[17] Ex. B Civil deposition of Trooper Young at pg. 65-66, lines 21-25, 1-7.
[18] Id. at pg. 74, at lines 3-7.
[19] Id. pg. 69-70 in total and pg. 85, lines 3-5.
[20] Ex. J Criminal deposition of Trooper Young, at pg. 12, lines 11-15.
[21] Ex. B Civil deposition of Trooper Young. At pg 68-69, lines 23-25, 1-3. Stolen tag is a misdemeanor offense.

A high-speed pursuit ensued and ended approximately five-minutes later at 18:02:56 the Honda crashed at the end of West Green Street in Perry Florida.[22] Defendant Young was so close behind the fleeing Honda that he saw the car crash at the end of Green Street and was able to see the passenger side of the vehicle throughout the crash, but could not see the driver's side.[23] Defendant Young went up to see if anyone was in the Honda.[24] He did not see anyone and returned to his car because he did not want to contaminate a possible track.[25] Officer (former Defendant) Mitchell arrived at the crash site 6:03:40 – 44 seconds after Trooper Young.[26]

### The Description of the Driver of The Honda

The Honda crashed at approximately 18:02:56.[27] 40 seconds later, at 18:04:02, 1 minute and 6 seconds post-crash, Defendant Young radios out the description of the driver of the Honda as a W/M, short blond hair, wearing glasses.[28] This same description, without hair color is sent out by Perry's

---

[22] Ex. F Young's First arrest report (4 pages) at pg 2 ¶ 2 and Ex. G FHP Call History Record, page 4 of 5.

[23] Ex. B Civil deposition of Trooper Young, at pg 19 lines 2-16. And Criminal deposition of Young Ex. J Pg. 11

[24] Ex. J Criminal deposition of Trooper Young, at 11, lines 7-12.

[25] Ex. B Civil Deposition of Trooper Young, at pg. 17, lines 23-25, and pg. 18 lines 1-3.

[26] Id. at 17, lines 13-18.

[27] Ex. G FHP Call History Report, at 4 of 5.

[28] Id.

dispatch.[29] The last of the three descriptions provided to law enforcement officers working the perimeter and looking for the fleeing driver of the Honda is given by Defendant Young over the radio at 18:46:10.[30] Defendant Young describes the driver's hair – as 'buzz cut dirty blond hair.'[31] Officer Mailly, used the description of the suspect as 'a white male, with short hair. wearing glasses' when he spoke to the Skylark employee.[32] The Skylark employee describing the room 15 as shirtless was the first reference to the Honda driver not wearing a shirt.[33]

**Search for the Driver of the Honda**

To find the Honda driver Defendant Young request a Perry K9 officer and Officer Dice responds, with his K9.[34] Defendant Young reported that Perry K9 officer Dice has a 'track' at 18:05:47.[35] As used in this case, 'track' does not mean that the dog has identified anyone or is after a specific person, 'track' is a term used to indicate that a dog has been deployed.[36] Officer Dice, even though Defendant Young had reported a 'track.' reports the failure to actually pick up a trail of someone that can be followed to Defendant Young.[37] This reported 'track'

---

[29] Ex. M City of Perry dispatch notes [Call History Report] page 3.
[30] Ex. G FHP Call History Report at 4 of 5
[31] Id.
[32] Ex. I City of Perry Incident report [Mailly] at 6 of 9 ¶ 3.
[33] Id. at 6 of 9 ¶ 2.
[34] Ex. B Young Civil Deposition pg. 21, lines 2-11.
[35] Ex. G FHP Call History Report at 4 of 5
[36] Ex. D Civil Deposition of Trooper Cabe, at pg. 147, lines 1-25.
[37] Ex. B Civil Deposition of Trooper Young, at 24 lines 1-7.

by officer Dice continued for 31 minutes until it was determined to be unsuccessful at 18:36:17[38]

As a result of the failure of the first attempted track, at 18:32:01, 27 minutes post-accident, Young requested DOC to send out their tracking team.[39]

At 18:40 – 37 minutes post-crash, and 8.5 minutes after the Perry K9 officer declared a failure in his effort to obtain a successful track of the driver - Defendant Cabe arrives at the Honda crash site.[40] Defendant Cabe is a trooper with the Florida Highway Patrol and was the 'Canine Officer' of the CIU team with Defendant Young.[41] Defendant Cabe had spent the day in training with his K9 and responded because he learned of the pursuit.[42] Defendant Cabe's K9, Kane, is certified to 'track'[43] and Defendant Cabe believes Kane is phenomenal in his ability to track.[44] The area where the track is attempted can become contaminated by other people or other things around the area (other dogs).[45] During the 37 minutes that Defendant Cabe and Kane were at the scene of the crash Cabe claims they did not even bother to try to obtain a 'track.'[46]

---

[38] Id.and ex. G FHP call history report pg. 4.
[39] Ex. G FHP Call History Report, at 4 of 5.
[40] Ex H. Narrative Supplement of Trooper Cabe, FHP changed reports at pg. 7 ¶ 5.
[41] Ex D. Deposition of Trooper Cabe, at pg. 34, lines 4-24.
[42] Id. at 30-31, lines 23-25 and 1-5.
[43] Id. at 184 lines 11-18.
[44] Id. at 184 lines 20-22.
[45] Id. at 193 lines 12-15.
[46] Id. at 180 lines 4-8.

7

At 19:17:30, one hour and 15 minutes after the crash, and 37 minutes after Defendant Cabe arrived, DOC arrived at the crash site to attempt to obtain a successful track.[47] Defendant Cabe and Defendant Young spent that one-hour and 15 minutes at the end of West Green Street either with Officer Dice attempting to obtain a track or simply waiting for DOC to arrive.[48] Other officers including Taylor County Sheriff's deputies, FHP officers, and City of Perry Police officers established a 'perimeter' in an effort to prevent the driver of the Honda to evade capture.[49] DOC deployed two different dog teams going in two different directions.[50] DOC losses any track or also fails to locate anyone.[51]

### Respond to The Skylark Motel

DOC arrived at the crash site at 17:17:30.[52] Nine minutes later, at 19:26:28, Officer Mailly with the Perry Police Department, advised over the radio that he learned from employees of the Skylark Motel that the 'suspect had *possible* just

---

[47] See for example: Civil deposition of Trooper Cabe, Ex D at 52, lines 2-4. FHP Call History Report, Ex. G at 4 of 5. City of Perry Incident report [Mailly] Ex. I. at 5 of 9, ¶ 3. City of Perry Incident report [Chaffin] Ex. I. at 4 of 9, ¶ 1.

[48] See footnotes 28, 29, and 35.

[49] Ex. G FHP Call History Report, at 4 of 5 (Defendant Rabun told to move further South).

[50] Id., see also Criminal deposition of Officer Charles 'Chas' Mitchell, Ex. K at 11, Lines 18 – 21. Ex. G FHP Call History Record P: 4 of 5 @ 19:26:52 "*other* DOC team going towards creek.") (Emphasis added) Ex. C Deposition of Defendant Rabun Vol. 1 at 98 lines 8-14. Ex. D Civil deposition of Trooper Cabe, at 173, lines 6-13.

[51] Ex. G FHP call history (reflecting reported no apprehensions from K9 Track).

[52] Ex. G FHP Call History Record at 4 of 5 @ 19:17:30.

checked into room 15 at the Skylark Motel.'[53] (Emphasis added) Mailly was at the Skylark Motel when he learned this information.[54]

After Mailly's radio dispatch Officers Chaffin, with the Perry Police Department, was commanded to go to the Skylark and assist if it was deemed necessary.[55] Officer Michell from the Perry Police Department who had "accompanied one of the [DOC] teams on their tracks,"[56] and Defendant Cabe who was on the other track[57] were among the first officers to arrive at the room.[58] Numerous other officers also responded to the room, or the Skylark Motel, including Defendant Rabun.[59]

Officer Mitchell and Officer Mailly "attempted to make contact at the . . . door of room 15."[60] The officers "knocked loudly on the door and announced [themselves] in a clear loud voice, 'Perry Police Department.'"[61] An 'elderly black woman[62] opened the door of Plaintiff's motel room in response to the officer's loud

---

[53] Ex. I City of Perry Incident report [Mailly] Ex. I. at 6 of 9, ¶ 3. FHP Call History Record Ex. G at 4 of 5 @ 19:26:28
[54] Ex. I City of Perry Incident report [Mailly] Ex. I. at 6 of 9, ¶ 2.
[55] Ex. I City of Perry Incident report [Chaffin] Ex. I at 4 of 9 ¶ 1.
[56] Ex. I City of Perry Incident report [Mitchell] Ex. I at 8 of 9 ¶ 2.
[57] Ex. D Civil deposition of Trooper Cabe, at 144, lines 9-10
[58] Ex. I City of Perry Incident report [Mitchell] at 8 of 9 ¶ 3.
[59] Ex. C Deposition of Trooper Rabun, Vol. I, at pg. 211, lines 2-18.
[60] Ex. I City of Perry Incident report [Mitchell]  at pg. 8 of 9 ¶ 3.
[61] Id. [Mailly] at pg. 6 of 9 ¶ 4.
[62] Ex. A Deposition of Plaintiff, at pg. 55, lines 12-13.

knocking and loud commands.[63] The African American woman was detained after stepping out of the room.[64]

## Entry into Room 15 at Skylark

Defendant Cabe was the first officer to enter the room.[65] There was no warrant to enter the room.[66] Defendant Cabe entered the room because Almeter failed to comply with his commands and he testified that he couldn't 'back-up' because of a fear that his dog would bite one of the Perry Officers who were behind him. [67] Defendant Cabe testified that Plaintiff "looked at me, ignored me, saw who I was. I couldn't go backwards because now I've got a live dog that's amped, Perry PD was behind me, I couldn't back up into them and risk them getting bit. So I stepped in to the left."[68] Defendant Cabe believed that Plaintiff had an obligation to comply with the commands given to him by law enforcement.[69]

---

[63] Ex. E Trooper Young's narrative in FHP's first Incident report at pg. 7 of 9 ¶ 2.

[64] Ex. E Trooper Cabe's narrative in FHP's first incident report at pg. 4 of 9 ¶ 4.

[65] Ex. D Defendant Cabe's deposition at pg. 19, lines 21-25, at pg. 83, lines 4-9, at pg. 54, lines 20-25, at 55, lines 1-8.

[66] Ex. J Criminal deposition of Trooper Young, at pg. 25, lines 5-7. Deposition of Trooper Cabe Ex. D at pg. 128 lines 19-21.

[67] Id. at 19, lines 21-24. (The "dog's very active right now and alert, and they [Perry Police Officers] were behind me; I couldn't back up because one of them might get accidently bit.)

[68] Id.

[69] Ex. D Deposition of Trooper Cabe at pg. 203 lines 17-20.

Defendant Young saw the entry into the room but was across the parking lot at the time entry was made.[70] The only officer who could identify Plaintiff as the driver of the Honda would be Defendant Young.[71] Entry into the room was made shortly after the woman came out.[72] After entering the room, Defendant Cabe continued to give loud commands and a K9 warning to [Plaintiff] who was still laying on the bed"[73] While in the room, Defendant Cabe's K9 was barking loudly.[74] When Defendant Cabe failed to get any response he requested Officers Mailly[75] and Mitchell[76] to make contact with the Plaintiff.[77]

After being instructed to 'make contact with the [Plaintiff]' Perry police officers Mailly, Mitchell, 'and other officers' also entered the room. [78] Defendant Cabe advised the officers he instructed to enter the room that if the Plaintiff offered resistance they should move out of the way so he would be able to deploy his K9 to

---

[70] Ex. J Criminal deposition of Trooper Young, at pg. 24, lines 1-6.
[71] Ex. C Deposition of Trooper Rabun, Vol. 1, at pg. 236, lines 8-13. Deposition of Trooper Cabe Ex. D at pg. 206 lines 8-13. (Cabe testifies: "I cannot identify him positively. I didn't see him.")
[72] Id. lines 13-21.
[73] Ex. I City of Perry Incident report [Mailly] Ex. I at pg. 6 of 9 ¶ 5.
[74] Id.
[75] Id.
[76] Ex. K Criminal deposition of Officer Mitchell, at pg. 17, lines 22-24.
[77] Id.
[78] Ex. I City of Perry Incident report [Mailly] at pg. 7 of 9 ¶ 2.

assist in the apprehension.[79] When officers entered the room, they found the Plaintiff lying on the bed with his eyes closed[80] and his arms across his chest.[81]

Defendant Rabun is a sergeant with the Florida Highway Patrol and was the immediate supervisor of both Defendant Young and Defendant Cabe on August 29, 2019.[82] Defendant Rabun testified that based on his experience and training Defendant Cabe should have waited until Trooper Young had positively identified Plaintiff as the driver of the Honda before entering Plaintiff's motel room.[83] Defendant Rabun claims Defendant Cabe had originally told him that Defendant Young had positively identified Plaintiff as the driver of the Honda prior to anyone entering the motel room.[84]

### The Arrest of Plaintiff

The loud knocking on the door, the shouting 'police,' the act of detaining the woman after she left the room, and several different officers giving different commands, to the Plaintiff while the K9 was barking loudly meant that Plaintiff was detained, tantamount to an arrest even before any officer entered the room.[85] Defendant Rabun testified that Plaintiff, if he had immediately complied with the

---

[79] Id. at 6 and 7 of 9 ¶ 4 and 1.
[80] Ex. I See narrative report by Officer Mailly pg. 8.
[81] Ex. D Defendant Cabe's deposition pg. 56, lines 10-12.
[82] Id. at pg. 219, lines 8-14
[83] Ex. C Deposition of Trooper Rabun, pg. 230, lines 8-14.
[84] Id. at 217-218, line 25, and lines 1-3.
[85] See footnotes 52-54, 56-60, and 62-64.

'loud commands' would still have been removed from his motel room,[86] handcuffed,[87] searched[88] and had his fingerprints taken.[89]

When Officer Mitchell entered the Motel room he grabbed Plaintiff's left wrist, and Officer Mailly grabbed his right wrist.[90] Plaintiff tensed, pulled, and braced his arms.[91] "At this point multiple other unknown officers arrived to assist with the arrest.[92] One of those other officers who entered the room was Defendant Young.[93] The officers in the room punched,[94] kneed,[95] and used other counter measures[96] including bringing the K9 right up to Plaintiff and attempting to place the dog's mouth on Plaintiff's tricep, but the dog 'nipped' the Plaintiff's back before he placed him to enable an apprehension.[97] Defendant Cabe described the first dog bite as a nip, and the second dog bite as the 'apprehension.'[98] An 'apprehension' was achieved when Defendant Cabe's dog 'locked on with a full-

---

[86] Ex. C Deposition of Trooper Rabun, pg. 120, lines 1-5.
[87] Id. at 120, lines 6-8.
[88] Id. lines 13-18.
[89] Id at 121, lines 19-21.
[90] Ex. I City of Perry Incident report [Mailly] pg. 8 of 9 ¶ 3.
[91] Id.
[92] Id.
[93] Ex. J Criminal deposition of Trooper Young pg. 27, lines 19-24.
[94] Ex. I City of Perry Incident report [Mailley] at pg. 7 of 9 ¶ 3.
[95] Id. [Mitchell] Ex. I at 8 of 9 ¶ 3.
[96] Id.
[97] Ex. D. Deposition of Trooper Cabe pg. 70 lines 4-11.
[98] Id. lines 18-25.

mouth grip' to Plaintiff's tricep he stayed there until removed by Trooper Cabe.[99] To remove the dog Trooper Cabe must restrict his airflow through the use of a 'dominator collar' by tightening the collar around the dogs throat.[100]

Defendant Young testifies that from the woman leaving the room until the Plaintiff was taken out in hand cuffs was 1 to 2 minutes.[101]

Defendant Young testified that Plaintiff failed to comply with the officer's commands[102], thus *obstructing*[103] their investigation of the 'fleeing and attempting to elude'[104] the reason law enforcement officers entered the room and arrested Plaintiff.[105] Defendant Rabun testified that if Plaintiff had obeyed the commands he was given by law enforcement, he would not have 'suffered.'[106] The case was dropped by the State Attorney's Office.[107]

### Memorandum of Law in Support of Motion for Summary Judgment

Pursuant to Rule 7.1 of the Local Rules of this Court, and the Court's Scheduling Order, Plaintiff provides the following memorandum of Law in support

---

[99] Id.

[100] Id. at 71 lines 1-12.

[101] Young civil Deposition pg. 112 ln 14-24.

[102] Young civil deposition  Pg: 31, Ln: 8-16

[103] Defendant Young's civil deposition Vol. 1. P: 30 L: 21-25, and P.: 31 L: 1-3.

[104] Id. at 31, Lines 4-5.

[105] Id at 31, lines 13-16, and at 32, lines 2-5.

[106] Deposition of Trooper Rabun, Ex C at 233, lines 18-21.

[107] Ex. N the Nolo prosequi filed by the State, entered the same day after Defendant Youngs deposition.

of his argument that he is entitled to summary judgment as a matter of law. Plaintiff acknowledges that there may be possible issues of material fact as to some of the allegations of Counts III, VII, VIII, and IX of the operative Complaint and therefore files this motion for partial summary judgment only as to the following Counts.

Count I, partial summary judgment finding that the entry by Defendants Cabe and Young into Plaintiff's motel room violated Plaintiff's civil rights. Count II, the false arrest of Plaintiff by Cabe and Young because Plaintiff exercised his lawful constitutional right to not leaving his motel room when 'commanded' to do so by Defendants. Plaintiff also seeks partial summary judgment holding all Defendants liable for all the reasonably foreseeable consequences flowing from their acts that violated Plaintiff's civil rights.

## 1.    Standard of Review

A Party seeking summary judgment may meet its initial burden of showing the Court that there is an absence of a genuine issue of any material fact by when a "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Without either a search warrant or an arrest warrant Defendants entered Plaintiff's motel room and subsequently arrested him. The burden to prove an

exception to the warrant for entry into the motel room and the burden to show probable cause for the arrest by 'obstructing because Plaintiff did not comply with Defendant's 'commands' must be met by Defendants.

"When the government invokes [an] exception to support the warrantless entry of a home, it must rebut the presumption that such entries are unreasonable. *See Welsh v. Wisconsin,* 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). To do so, it must demonstrate a "grave emergency" that "makes a warrantless search imperative to the safety of the police and of the community." *Illinois v. Rodriguez,* 497 U.S. 177, 191, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) <u>Riggs v. State</u>, 918 So. 2d 274, 278–79 (Fla. 2005).

For purposes of summary judgment, Plaintiff is not required to present facts or evidence to refute any claim of an exception to the warrant requirement, but rather Defendants must present "specific facts showing that there is a genuine issue for trial." <u>Celotex</u> at 324 (quoting Fed. R. Civ. P. 56€). <u>See also</u>, <u>Tipton v. Bergrohr GMBH Siegen</u>, 965 F.2d 994 (11th Cir. 1992) *cert denied*, 113 S. Ct. 1259 (1993)

**2.      Count I - Fourth Amendment Violation Entering the Motel Room**

Plaintiff asks the court to find that Defendants' entry into Plaintiff's motel room was unreasonable and therefore violated the Fourth Amendment to the United States Constitution.

16

Defendants did not possess a warrant to enter Plaintiff's motel room. Entering a home without a warrant is presumptively unreasonable and a bright line is drawn at the entry door's threshold. <u>Payton v. New York</u>, 445 U.S. 573 (1980). "A hotel room—though not what ordinarily comes to mind when one pictures a "house"—qualifies as a place in which the people remain "secure" against unreasonable searches and seizures." <u>United States v. Mastin</u>, 972 F.3d 1230, 1236 (11th Cir. 2020)[108]

Defendants had fair warning that their entry into the motel room violated Plaintiff's rights because those rights were clearly established.[109] As <u>Payton </u>makes plain, police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." <u>Kirk v. Louisiana</u>, 536 U.S. 635, 638 (11th Cir. 2002). And "the Supreme Court has re-inked <u>Payton's</u> firm line on numerous subsequent occasions." <u>McClish v. Nugent</u>, 483 F.3d 1231, 1242 (11th Cir. 2007). Here, Defendants are unable to satisfy either prong. Defendants did not have a warrant, nor did they have probable cause coupled with an exigent circumstance, when they entered Plaintiff's motel room, assaulted him, attacked him with their K9, falsely arrested him and searched him.

---

[108] <u>Stoner v. California</u>, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (internal citation omitted); see also <u>United States v. Forker</u>, 928 F.2d 365, 370 (11th Cir. 1991) ("[A] person does not forfeit fourth amendment protections merely because he is residing in a motel room)
[109] <u>Patel v. Lanier Cnty.</u>, 969 F.3d 1173 (11th Cir. 2020)

The officers' stated justification for entry into the room was that Plaintiff failed to comply with their 'lawful' commands. In part they base this on a weak argument that they had a reasonable suspicion that Plaintiff was the driver of the Honda. Undisputedly at this point, he was not.

Two points should be made. First, the Defendants had no more than a 'hunch' that Plaintiff was the driver of the Honda, and once the woman was found in the room that hunch evaporated. Second, even if the Plaintiff was the driver of the Honda Defendants could not lawfully enter the room without a warrant under the facts of this case.

Defendant Rabun testified, based on his training and experience, that entry into the room could not be made without Defendant Young's identification of the occupant as he was the only one who had a chance to see the driver. Rabun is correct that entry could not be made under these facts. Of course if Defendant Young had positively identified the Plaintiff as the driver that identification would have been probable cause for a warrant, but would not have authorized Defendants to enter the room.

At trial there can be no evidence offered to support the entry by Defendants into the motel room. Even the Parties respective retained law enforcement experts both agree that the initial entry into Plaintiff's motel room, under color of State law, deprived Plaintiff of his constitutional rights.

Defendants' retained law enforcement expert, Daniel Losey, after reviewing almost 70 case related documents selected and supplied to him by Defense counsel and relying on nationally recognized law enforcement Guidance and Professional Standards publications, found that: "At the time Defendant Cabe made the initial entry into the motel room, although just a few feet inside the doorway, this entry was not reasonable or consistent with widely accepted police practices."

Plaintiff's retained law enforcement expert, Roy R. Bedard, also after reviewing case materials, relying on numerous national publications and case law concluded that "Ninety-four minutes had passed from the time that Young lost track of the driver, to the time officers believed they found him at the Skylark hotel. Still they entered, thereby violating well-established Constitutional rights of the occupants.

Defendant Young and Defendant Cabe, "as the government actors responsible for the warrantless seizure [of Plaintiff], 'ha[ve] the burden of proof of showing exigent circumstances.'" United States v. Tovar–Rico, 61 F.3d 1529, 1535 (11th Cir.1995) Gennusa v. Canova, 748 F.3d 1103, 1115 (11th Cir. 2014). They have failed to do so.

**3.    False Arrest of Plaintiff by Defendant Young and Defendant Cabe**

In deposition Defendants testified that Plaintiff's arrest while he was in his motel room[110] was for obstructing the Defendants' investigation to locate the driver of a stolen Honda. Plaintiff obstructed the investigation by his refusal to exit his motel room when commanded to do so.[111] Because there was no warrant, Defendant Young and Defendant Cabe, "as the government actors responsible for the warrantless seizure [of Plaintiff], 'ha[ve] the burden of proof of showing exigent circumstances.'" United States v. Tovar–Rico, 61 F.3d 1529, 1535 (11th Cir.1995) Gennusa v. Canova, 748 F.3d 1103, 1115 (11th Cir. 2014). For purposes of summary judgment, Plaintiff is not required to present facts or evidence to refute any claim of an exception to the warrant requirement, but rather Defendants must present "specific facts showing that there is a genuine issue for trial." Celotex at 324 (quoting Fed. R. Civ. P. 56c). See also, Tipton v. Bergrohr GMBH Siegen, 965 F.2d 994 (11th Cir. 1992) cert denied, 113 S. Ct. 1259 (1993)

"Encounters between police officers and citizens generally can be categorized as arrests, investigatory stops, or consensual encounters." U.S. v. Reeves, 524 F.3d 1161, 1166 (10th Cir. 2008) The contact between Defendants and the Plaintiff in his motel room was not a consensual encounter. Consequently, the

---

[110] A constitutional protected area.

[111] Defendant Young's civil deposition, Vol. 1, at 31, lines 13-16, "And they -- they were trying to get his attention, trying to get him to come out, and he kept playing like he was asleep, and then they had went in the room to basically arrest him for that."

20

encounter is either an arrest or an investigatory stop. But because both are a Fourth Amendment seizures, and both seizures occur in the home (or a motel room) are within the purview of <u>Payton</u>, the rule is the same in either situation – Defendants were required to obtain a warrant or prove probable cause plus exigent circumstances.[112]

The test to determine if <u>Payton</u> protections apply, is not the location of the officers at the time of the seizure, but the location of the arrested person. <u>United States v. Maez,</u> 872 F.2d 1444, 1451 (10th Cir. 1989). Here Plaintiff was in his motel room on his bed.

"[A] person has been `seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." <u>United States v. Mendenhall</u>, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). "[T]he appropriate inquiry [to determine if an arrest has occurred] is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." <u>Florida v. Bostick</u>, 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

Circumstances that indicate a seizure include, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of

---

[112] See footnotes 33 & 34.

the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870; Maez, 872 F.2d at 1450. Here, all these elements are present. Numerous officers, loud commands[113], and threats of getting attacked by a trained police dog.[114] Any reasonably well-trained officer would know and have fair warning that when several officers, standing in the doorway of a motel room, yelling commands at the occupant, who was laying on the bed with his eyes closed, while threatening that occupant that the loudly barking K9, was an unreasonable seizure in violation of the Fourth Amendment. If that was not enough, Defendants Cabe and Young actually made physical entry into the room and used force to arrest Mr. Almeter.

These actions by Defendants resulted in the illegal of seizure of Plaintiff, without a warrant and without exigent circumstances. Plaintiff is entitled to Partial summary judgment as to liability on count II of the complaint.

### 4.        Defendants Liable for the Foreseeable Consequences of their Acts

Plaintiff further ask the court to enter partial summary judgment holding that, because of the unreasonable entry into the Plaintiff's motel room, Defendants

---

[113] Ex. C. Deposition of Defendant Rabun, Vol. 1 P: 92 L: 3-12 & P: 94 L: 4-10, Ex. B. Deposition of Defendant Young, Vol. 1 P:46 L: 2-12, & P: 39-40 L: 25-5, Ex. D. Deposition of Defendant Cabe, Vol. 1 P: 56 L: 1-4 & P: 76 L: 7-15 & P:203 L: 13-16
[114] Ex I, City of Perry Police Reports

Cabe and Young are "liable for the foreseeable consequences of their actions that violate a plaintiff's civil rights" Jackson v. Sauls, 206 F.3d 1156 (11th Cir. 2000). This principle is clearly established through multiple cases that recognize the principle that Section 1983 defendants are responsible for the natural and foreseeable consequences of their actions.[115] Here those foreseeable consequences include the canine attack, the battery, the illegal arrest, the broken back, the post-traumatic stress disorder, and all general damages the jury determines are justified.

## CONCLUSION

Based on Plaintiff's Complaint, the record evidence filed herein and the applicable case law, the Plaintiff, Trent Almeter, respectfully request this Court to enter summary judgment in his favor as to Count I, Count II, and a finding that

---

[115] Bailey v. Swindell, 89 F.4th 1324, 1332 (11th Cir. 2024), reaffirmed this principle. The court found that theofficer's argument that because the jury found that he did not use excessive force, "the only damages available [to Plaintiff] are the damages flowing from the unlawful entry alone, which would be de minimis nominal damages. [Defendant] is mistaken. Section 1983 defendants "are, as in common law tort suits, responsible for the natural and foreseeable consequences of their actions." *Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000). [Defendant] might not be liable for the excessive force claim, but he is liable for any and all reasonably foreseeable damages caused by his unlawful entry. As the district court instructed the jury before deliberations, "any force that Deputy Swindell used to effectuate the unlawful arrest was a violation of the Fourth Amendment." Injuries resulting from a physical arrest are certainly foreseeable consequences of an unlawful arrest in someone's home."

23

Defendants are liable for all the foreseeable consequences of their actions that violated plaintiff's civil rights.

Respectfully submitted this 14th day of June 2024.

s/*Kevin Alverez*

## CERTIFICATE OF WORD LIMIT

The undersigned certifies that this document complies with the word limit set forth in Rule 7.1(F), N.D. Fla. Loc. R., and contains 5,647 words which include the headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

*/s/ Kevin Alvarez*

Kevin Alvarez

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY emailed the to the foregoing on this 15th day of June 2024 to Robert B. Buchanan, Esq., with Buchanan & Buchanan, P.A, at the following email addresses: rbuchanan@rbtrial.com, cdelrosso@rbtrial.com; aperry@rbtrial.com; afountain@rbtrial.com), counsel for Defendants, William Young, Nathaniel Cabe and Sgt. Matthew Rabun.

By:

/s/Kevin Alvarez
Kevin Alvarez, B.C.S.
Board-Certified Criminal Trial Law
Florida Bar Number 88527
Law Office of Kevin Alvarez P.A.
522 East Park Ave. Suite 100
Tallahassee, Florida 32301
Phone (850) 559-0050
Fax: (850) 999-7563
KevinAlvarezesq@gmail.com
Paul M. Hawkes
Florida Bar Number: 564801
15210 Mahan Drive
Tallahassee, FL 32301
Hawkes.paul@gmail.com

Attorneys for Plaintiff Trent Almeter