**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**


TRENT ALMETER,

      Plaintiff,

      v.                            Case No:  4:23-CV-336-RH-JFM

WILLIAM YOUNG, NATHANIAL CABE,
MATTHEW RABUN; DAVE KERNER, in his
official capacity as the Executive Director of the
Florida Department of Highway Safety and
Motor Vehicles; the CITY OF PERRY,
FLORIDA; TRACE CHAFFIN, JOEL
MAILLY, and CHARLES "CHAS"
MITCHELL,

Defendants.

_____/

## PLAINTIFFS RESPONSE TO DEFENDANT RABUNS MOTION FOR SUMMARY JUDGEMENT[1]

    Plaintiff TRENT ALMETER, by and through his undersigned counsel, files

this response in opposition to Defendant Matthew Rabun's motion for summary

judgment [ECF No. 80] because there are genuine issues of material fact that

preclude the entry of summary judgment as a matter of law.[2]

---

[1] Exhibits in support of this motion are attached as exhibits to this filing. Each exhibit has a cover page. Citations to transcripts refer to the transcript page number located at the top corner of the transcript. References to document length do not include the cover page.

[2] Rabun's motion should be titled as a motion for partial summary judgment. He did not move for summary judgment as to count two. He previously moved to

**OVERVIEW OF DEFENDANT'S MOTION**

In his Motion for Summary Judgment, Defendant Rabun, makes drafting errors in his "*Overview Of Plaintiff's Claims Against Rabun.*" [ECF No. 80 pg. 2]

First, Defendant Rabun references "Plaintiff's Second Amended Complaint.[3]" There is no 'Second Amended Complaint." The operative complaint is the "First Amended Complaint"[4] *See* [ECF No. 37].

Second, Defendant Rabun states that Plaintiff asserted only two causes of action against him. Defendant Rabun errs. Plaintiff's Complaint alleges three causes of action against Defendant Rabun. In Count II [ECF No. 18, pg. 16-19], Defendant is alleged to have violated Plaintiff's Constitutional rights by falsely arresting Plaintiff. Defendant Rabun does not seek Summary Judgment on this Count.[5] Count II alleges in Paragraph 87 "Defendants . . .  RABUN, . . . deprived TRENT ALMETER of rights secured by the Constitution and the laws of the United States, the State Constitution, and state laws when they falsely imprisoned

---

dismiss count two in his motion to dismiss; therefore, he knows he is being sued for false arrest). See [ECF 25 Pg. 10]

[3] Page 2 of Defendant Rabun's Motion for Summary Judgment, ECF 80.

[4] ECF No. 37

[5] Defendant Rabun had previously moved to dismiss Count II, a claim for false arrest, which was denied, so he is obviously aware that he is being sued for False Arrest. *See* [ECF 25 pg. 10]. Additionally, Defendant Rabun's counsel asserts in his Response to Plaintiff's Motion for Summary Judgment that Plaintiff did not move for Summary Judgment against Rabun under Count II. [ECF 85 pg. 2]

TRENT ALMETER, unlawfully detaining him against his will, without legal authority . . . outside his room after forcibly removing him from his room." Count II of the Amended Complaint alleges in paragraph 93, "Defendant Rabun directed, approved, and authorized TRENT ALMETER'S unconstitutional arrest; he failed to prevent defendant YOUNG and CABE from violating TRENT ALMETER'S Fourth Amendment rights; and knowingly disregarded the fact that TRENT ALMETER'S illegal arrest and subsequent incarceration would be the obvious consequences of his actions." In addition, several other paragraphs were incorporated by reference that apply to the claims against DEFENDANT RABUN.[6]

Third, DEFENDANT RABUN asserts that Plaintiff 'causes of action' are against Defendant Rabun in 'his official capacity.'[7] This is not true. In paragraph 8 of the operative complaint, Defendant Rabun is identified as a Florida Highway Patrol officer, and in paragraph 10 of his complaint, Plaintiff asserts that [a]ll the foregoing officers employed by the Florida Highway Patrol are sued in their individual capacities, and all acted under color of law, but outside the course and scope of their employment."[8]

---

[6] Examples include [ECF No. 18] paragraphs 8, 10, 33, 37, 41, 42, 47, 50, 52, 56, 57, 58, 59, 67, & 68
[7] DEFENDANT RABUN'S Motion for Summary Judgment [ECF No. 80 page 2.
[8] Plaintiff's First Amended Complaint, [ECF No. 18 pg. 3 paragraphs 8 and 10]

Count III does allege that Defendant Rabun colluded with other law defendants to falsely allege Plaintiff committed criminal acts, and Count VI alleges Defendant Rabun failed to intervene when he had the opportunity to prevent the use of force for the arrest of Plaintiff in several instances, including the ongoing false arrest of plaintiff.

**DEFENDANT CLAIMS THREE GROUNDS FOR SUMMARY JUDGMENT**

A. Defendant Rabun claims that the plaintiff has not and cannot show Defendant Rabun, in his official capacity, is liable to the plaintiff for violating his rights. Plaintiff responds that he has sued defendant Raben in his individual capacity. See [ECF No. 18 page 3, paragraphs 8 and 10].

B. Defendant Rabun alleges that the plaintiff cannot prove the probable cause affidavits for the plaintiff's arrest contained any misleading or false testimony. The plaintiff responds that this is a disputed fact and that the dispute can be proven through record evidence, as discussed below.

C. Defendant Rabun alleges that the plaintiff is not entitled to damages against Defendant Rabun because he was not present at the scene for the Fourteenth Amendment violation (sic). Plaintiff responds that there is photographic evidence of Defendant Rabun's presence at the scene. Defendant Rabun was a supervisor of these other trooper defendants, but he is not being sued just

4

as an absent supervisor. Defendant Rabun is sued because he was a present and active participant in the misconduct.

## STATEMENT OF FACTS

Plaintiff rejects the Defendant's statement of facts that contradict the facts submitted below:

On August 29, 2019, Trooper Young attempted to initiate a traffic stop on a silver Honda. The Honda did not stop and eventually crashed on Green Street in Perry, Florida. When Trooper Young arrived, the dust was still in the air. He could see that the driver of the vehicle did not flee north.[9] He could also see there was no passenger that fled from the car.[10] This is consistent with his initial observation that the vehicle only had one occupant – a white male.

We agree with Defendant Rabun that multiple agencies participated in attempting to locate the driver of the Honda. A perimeter was set up that included officers from the Perry Police Department,[11] the Taylor County Sheriff's Office and the Florida Highway Patrol. Where we disagree is the role of Defendant Rabun.

---

[9] Defendant Youngs Civil Deposition Ex. B Page 19 L: 5-16 and Defendant Young's deposition in the criminal case, Ex. A pg. 11, L: 3-5.
[10] Id. at 12, L: 11-15.
[11] Id. at 12, L: 20

Defendant Rabun's claims that he was not "present at the Skylark until after Mr. Almeter was arrested and removed from the motel room." This claim is contradicted by the testimony of Defendant Rabun's co-defendants and the reports of the Florida Highway Patrol.

Defendant Young testifies that he and Defendant Rabun had a telephone call 'before we started track. It was like right when it was happening."[12] Defendant Rabun stated to Defendant Young that he was on his way down to Taylor County and 'like, an hour before he got there.' In the criminal deposition Defendant Young testified that Defendant Rabun was on the perimeter. At 6:34:49, almost an hour before the arrest, Defendant Young instructs Defendant Rabun "to move a few blocks south" on the moving perimeter.[13] Defendant Cabe testified in his civil deposition that Defendant Rabun was on the canine track.[14] Everyone responded to the Skylark. Defendant Young testified that he told Defendant Rabun about getting his two fingers squeezed right after it happened because it was an hour and change after the call because he (his sergeant) was "actually there".[15]

---

[12] Id. Pg 7-8.
[13] Ex. C Florida Highway Patrol Call History Record, pg. 4 of 5, 18:34:49
[14] Ex. D. Civil deposition of Cabe, at pg. 194 L:24-25 and pg. 195 L:2
[15] Criminal deposition of Defendant Young at 18, L: 13-19

The attempt to locate the driver of the Honda included at least two separate attempts to obtain a 'track' using first a canine from the Perry Police Department,[16] and at least two canine teams from the Florida Department of Corrections (DOC).[17] The Perry canine failed,[18] and efforts were abandoned about 30 minutes after they began.[19]

After the Perry canine failure, DOC was called out and arrived on scene one hour and 15 minutes after the Honda crashed at 7:17:30 pm.[20] DOC brought two teams and had nine minutes to unload the dogs and attempt to obtain a track before Officer Mailly, with the Perry Police Department, notified the search team that an individual had checked into the Skylark. At 7:26:28. Officer Mailly's report resulted in all officers on the perimeter and working with the dog teams being instructed "to get close to the entrance of the Skylark."[21] There can be no dispute with the fact that DOC had not located the driver of the Honda. The dog team was at the 'back of the Skylark parking lot' at the time officer Mailley made his report. The back of the Skylark Motel Parking lot is located to the Northeast of the crash

---

[16] Ex. B Pg. 23 L:17-24, and pg. 24 L:1-2
[17] Ex. C. Florida highway Patrol Call History Record, pg. 4 of 5, 19:26:52, "*other dog team going toward creek*" (Emphasis added)
[18] Ex. B Pg. 23 L:17-24, and pg. 24 L:1-2
[19] Ex. C. Florida Highway Patrol Call History Record, pg. 4 of 5, 18:32:01 (they had to call for DOCs track team)
[20] Id. pg 4 of 5.
[21] Id. Pg 4 of 5

site. Defendant Young testified that the Honda driver ran to the South. Defendant Young saw the crash and testified that could see that the driver did not run to the North, or to the East.[22] Defendant Young thought the Honda driver ran to the South, a direction that the driver would be able to run and be out of sight before Defendant Young arrived.

One of the confusing uses of terms by Defendants is referring to a 'track' to include an attempt to find a track.[23] The Defendants routinely use the term "track" to describe the "attempt to obtain a scent."

Trooper Rabun was at the motel talking with a bitten and handcuffed Trent Almeter before he was taken to the hospital and ultimately to jail. He could have intervened in the unlawful arrest and unlawful use of force against Trent Almeter. He did not.[24]

---

[22] Ex. B. Young, civil deposition pg. 19, L: 5-16

[23] See Florida highway Patrol Call History Record, pg. 4 of 5, 18:05:47 Defendant Young reports over his radio "K9 track one officer will stay with vehicle"

[24] Even though Trent Almeter was arrested before that picture was taken, and unlawful excessive force was utilized to arrest him, the arrest was a continuing event. Therefore, the use of force was a continuing event since all force used during an unlawful arrest is excessive since no force is authorized. *See Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests. These claims accrue when either the seizure ends or the plaintiff is held pursuant to legal process)(*internal citations omitted*)



*Figure 1 Defendant Rabun is the tall trooper with the Sgt rank insignia on his sleeve. (Ex. E.*

*Matt Smith body camera video clip)*



This is a picture from the video of the body camera of Perry Police Officer Matt Smith showing Plaintiff explaining to Defendant Rabun that they have the wrong person – he did not steal a car, he did not flee and attempt to elude anyone, and he had not been through a creek. This last fact, Plaintiff pointed out could be verified by looking at his socks.

Defendant Rabun, call number is #262, because of his radio and participating in the perimeter would know immediately that his co-defendants had no legal authority to enter the Plaintiff's motel room. Defendant Rabun in deposition authenticated the call history record from this incident.[25] Defendant Rabun first appears in the call history at 18:34:39 being instructed to move a few blocks south.[26]

The arrest and report of the K9 attack was made at 19:30:16.[27] Defendant Rabun was active at the scene for at least an hour before Plaintiff's arrest. According to Defendant Cabe, Defendant Rabun was on the K-9 track.[28]

Trooper Rabun from his conversation with Trent Almeter should have known that Trent Almeter was not the person that fled from law enforcement. The

---

[25] Ex. F. Defendant Rabun Deposition, pg. 11-13.
[26] Ex. C. Florida Highway Patrol Call History pg. 4 of 5 at 18:34:39.
[27] Id. at 19:30:16.
[28] Ex. D civil deposition of Cabe Pg. 195

crash happened to the south of the hotel. The driver fled south or west of the crash. Law enforcements theory was that the perpetrator had to go through a muddy creek of neck high water. Trent had clean white socks and dry clothes on.



*IMPG0041 taken by Sgt Smith with the Perry Police Department*

Trooper Rabun reviews almost all of Trooper Young's reports (unless he, Rabun, is on leave or some other exigency)[29]. Trent Almeter was initially arrested solely for resisting an officer without violence.

---

[29] Ex. F Rabun civil deposition pg. 56 L:24-25, Pg. 57 L: 1-5

Defendant Troopers try to frame that initial arrest as an error, that Mr. Almeter should have been arrested for resisting with violence and battery on a law enforcement officer, and that Defendant Young just picked the wrong box. Picking the wrong box fails to explain why "two charges" were missed. Second, Sergeant Smith with the Perry Police Department met with Defendant Young at the Jail the night of the incident. We can see it reflected in the call notes at 12:31 in the morning on August 30, 2024, when Trooper Young requested dispatch to contact a supervisor from the Perry Police Department. [30]

This correlates with the sworn deposition testimony of Sgt. Smith, who says he was contacted by dispatch and asked to make contact with Trooper Young. He testified that he met with Trooper Young at the Jail, and Trooper Young told him the only charge he was placing on Mr. Almeter was obstruction, a misdemeanor resisting without violence.[31]

This is also supported by the observations of what happened in the hotel room made by other Perry Police Officers. Officer Mitchell was one of the first officers in the room to grab Mr. Almeter. He was there the entire time hands on Mr. Almeter until Mr. Almeter was cuffed. Officer Mitchell never saw Mr. Almeter batter Trooper Young, never heard Trooper Young, say he was battered by Mr.

---

[30] Ex. C. FHP Call Records pg. 4 of 5 near the bottom.
[31] Ex. G. Sgt. Smith deposition pg. 7

Almeter, did not hear him yell out he was battered by Mr. Almeter, nor that he was planning on charging Mr. Almeter for Battery.[32] Officer Mitchell also did not see Trooper Young get pulled to the ground by Mr. Almeter.[33] Officer Mitchell also denies that Mr. Almeter resisted arrest with violence.[34]

Officer Mitchell is not the only Perry Police officer whose testimony supports the plaintiff's position. Officer Chaffin gave a deposition in the criminal case and testified under oath that the level of resistance offered by Mr. Almeter would constitute resisting without violence. That he did not observe a battery committed against Trooper Young nor did Mr. Almeter resist him or any other officer with violence.[35]

To summarize, what we have learned is, Trooper Young initially arrests Mr. Almeter for resisting without violence. That is the only level of resistance supported by the testimony of Officer Mitchell and Officer Chaffin who were hands on with Mr. Almeter. Trooper Young tells Sgt. Smith with the Perry Police Department that was the only charge he was charging him with that night.

---

[32] Ex. H Office Mitchell Civil Depo Transcript pg. 102
[33] Id. Pg 103 L: 21-23
[34] Id. Pg. 109 L: 4-14
[35] Ex. I pg. 30 L: 1-13

A reasonable conclusion from this evidence is that Mr. Almeter did not commit the crime of Battery on a Law Enforcement Officer or the crime of Resisting with Violence and that when Trooper Young charged him with resisting without violence that was exactly what he intended on charging him with. Trooper Young claims to have not known that Mr. Almeter would have had a complete defense to that crime based upon the arrest being illegal.[36] Maybe he did, maybe he didn't.

When asked in the criminal deposition about the additional charges and how they came about, Defendant Young testified they came about after speaking with Defendant Rabun.

> BY MR. ALVAREZ:
> Q. What it looks like is Mr. Almeter was – that illegal entry was made into his hotel room and when he was initially arrested for resisting without violence he would have had a complete defense to that charge. Then it looks like that there was a conversation had with some of the higher-ups at FHP that then decided it would be better to go ahead and charge a resisting with violence and a battery on a law enforcement officer, because those charges would not have a complete defense, as a way to do a little cleanup from the initial illegal entry into the hotel room and the false arrest of Mr. Almeter. Was that conversation had with anybody that you talked to?
>
> A. No. I talked to my sergeant about it and he told me about the -- I just -- that night, I put it in the report of him pulling me to the ground. And he told me that's -- he said, "That's resisting with violence

---

[36] Ex. A Youngs criminal depo Pg. 33

14

because he's throwing you off balance," and all of this. So that's -- that's what that was.

Q. Who was the sergeant that told you that?

A. Rabun. Matthew Rabun.[37]

The initial arrest report does not mention anything about Defendant Young being pulled to the ground.[38]

A jury could conclude that Defendant Young changed his report, altering the report to include false or misleading information, at the direction of Defendant Rabun. Defendant Rabun needed these changes to justify the use of attack by the K9 in the 'use of force' (control) report.

Defendant Young also testified that Defendant Rabun when a meeting was called by Sargent Ogden, the statewide supervisor over the Patrol's canines, to instruct Defendant Young and Defendant Cabe to change their reports. Defendant Young testifies Defendant Rabun was present. Defendant Young is directed to come down to Florida Highway Patrol Headquarters along with Defendant Rabun. At that meeting he is told to change his report. Defendant Cabe recalls being at a

---

[37] Ex. A Criminal Deposition of Defendant Young at 33-34, L: 15-25 & 1-11.
[38] Ex. J Youngs First Arrest Report, Page 3 of 4 first paragraph

meeting with Defendant Young and Ogden discussing this incident but thinks it might have been in Gainesville.[39]

Defendant Young's changes include a description of the actions of the Plaintiff changing from "he grabbed my index and middle finger and began to squeeze I had to pry his fingers off of mine" to the much more aggressive "he grabbed my hand and began to squeeze. He started to pull my arm, causing me to lose balance. I told him to let go and he did not. I had to pry his grip off of my hand."

Defendant Cabe, the trained canine officer who knew he needed a felony before commanding the dog to bite someone described the events before the dog bite as: "Trooper Young yelled out stop grabbing my arm. The suspect actually grabbed Trooper Young's hand and was trying to pull him off balance, physically pulling him towards the ground. Trooper Young temporarily lost his balance due the suspect grabbing and pulling him."

After the headquarters meeting with all Defendants and Sergeant Ogden, Defendant Cabe's report read: "Trooper Young yelled out, stop grabbing my arm. The suspect grabbed Trooper Young's hand and was trying to pull him off balance (now aggressively resisting). The suspect was physically pulling Trooper Young

---

[39] Ex. D Civil deposition of Defendant Cabe at Pg. 84-87.

16

towards the ground and putting Trooper Young at risk of injury or possibly having one of his weapons taken from him. Trooper Young lost his balance due the suspect grabbing and pulling him towards the ground, again putting Trooper Young at risk."[40]

A juror could reasonably conclude that Defendant Ruban was involved in a conspiracy to cover-up illegal law enforcement actions.

A juror could also reasonably conclude that after Plaintiff was removed from the room, it became clear that he was not the person that stole the car. His story was supported by the finding of the vehicle he came in by a sheriff's deputy, the black woman he was with provided an alibi, and the video that at least Defendant Young admits watching that established that Plaintiff arrived at the Skylark before 6:00 pm and that he was dropped off by an elderly gentleman and that he was accompanied by the African American woman. Each of these facts destroys any

---

[40] Compare Exhibits K and L. Exhibit K is the first set of incident reports (9 pages), and Exhibit L is the second set of reports (11 pages). Of note, look at the date and times of the 11-page edited reports. We don't know exactly when the meeting occurred with Ogden, Young, Cabe and Rabun, but we know it was not the night the incident happened. A reasonable jury could conclude that since the 11-page reports are dated the night of the incident, it was done intentionally to hide the fact that this report is not the original. A jury could also find the dates on the 11-page report were messed with because, while they have the appearance of being computer generated, on page 4 under NARRATIVE INITIAL: its dated for March 30, 2019, or five months before the incident. On page 10 of 11, the report is signed by Defendant Rabun.

17

indication Plaintiff was the individual driving the stolen Honda, and each of these facts give incentive to Defendants who falsely arrested and physically abused an innocent individual.

The multiple reports that make it appear that Plaintiff stole a car and was a fleeing felon, that all use deceptive and misleading information and belatedly added felony charges show a malicious intent by Defendants to avoid liability for their illegal actions.

## MEMORANDUM OF LAW

To prevail on summary judgment, the moving party must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant has shown that no material facts are genuinely in dispute, the burden shifts to the non-movant to show a disputed issue precluding summary judgment. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). In considering whether a genuine dispute exists as to a material fact, courts must draw all reasonable inferences and resolve all disputes in favor of the non-moving party. See Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995). Jennings v. Stewart, 4:20-CV-58-AW-MAF, 2021 WL 10428455, at *2 (N.D. Fla. Feb. 1, 2021)

## COUNT THREE

18

Defendant Rabun is sued in Count III because he conspired with his co-defendants, and Sergeant Ogden of the Florida highway patrol. The conspiracy involved at least one meeting at headquarters,[41] 2900 Apalachee Parkway, in order to change the previously prepared reports. The changes, in both Defendant Young's report and Defendant Cabe's report, created an illusion of probable cause to arrest Plaintiff for felony offenses. The meeting took place a significant period of time after the arrest of Plaintiff.

Defendant Rabun is not entitled to summary judgment on Count III, as a matter of law. The inference from the material facts shows Defendant Rabun and his co-defendants conspired to hide the fact that Trent Almeter was innocent of the fleeing and eluding, hide the fact that hot pursuit exception did not immunize troopers from the illegal entry into Plaintiffs hotel room and fabricated the additional felony charges.

This is not a claim found in a theory of respondeat superior like the Defense suggests, where a plaintiff tries to hold a supervisor liable for the acts of his subordinates. Plaintiff seeks to hold Defendant Rabun liable for his own acts and for conspiring with and directing other troopers to violate Plaintiff's rights.

---

[41] Ex. M Civil Deposition of Defendant Young, Vol 2, pg. 201-203.

To prove the claim of malicious prosecution against Defendant Rabun, Plaintiff must prove that the troopers "instituted or continued" a criminal prosecution against him, "with malice and without probable cause," that terminated in his favor and caused damage to him See Williams v. Aguirre, 965 F.3d 1147, 1157 (11th Cir. 2020).

Plaintiff suffered two formal arrests. First, he was arrested, without a warrant, for resisting arrest without violence. Second, weeks later, he was arrested for battery on a law enforcement officer and resisting an officer with violence. The arrest was pursuant to the filing of a direct information. This was based upon the altered reports provided by Defendant Young and approved by Defendant Rabun.

Defendant Rabun knew his co-defendants violated Plaintiff's rights when they entered his hotel room. He was on scene, actively directing resources, allegedly investigated, and authored a report. This is not a case of supervisor liability where the supervisor played no active role in the misconduct or would have no reason to foresee the illegal conduct and had no ability to intervene to prevent or limit the illegal conduct.

To justify the use of the K-9 and to cover up the illegal entry into the room. Defendant Rabun conspired with his co-defendants about adding the felony charges. A new packet was provided to charge Battery on a Law Enforcement

20

Officer and Resisting with violence. The state attorney filed information, and a capias was issued, resulting in Plaintiff's arrest almost 30 days later.

## COUNT SIX

Count VI is a Fourth Amendment claim of a failure to intervene to prevent the use of excessive force against Plaintiff. Summary Judgment is not appropriate for this count. Defendant Rabun cites no case law to support his position that he is entitled to Summary Judgement.

The crux of Defendant Rabun's argument is that he was not present at the Skylark at the first instance of illegal entry and, therefore did not witness the excessive force[42] used against Plaintiff by Defendant Rabun's co-defendants. Defendant's position is since he was not present and did not witness the initial entry into the room and the physical assault that took place inside the room, he cannot be held liable and is entitled to summary judgment. Defendant Rabun errs. There is strong circumstantial evidence that Defendant Rabun was on the scene at the time events were unfolding. First Defendant Cabe says Defendant Rabun was on the Canine track. Second, Defendant Young says his sergeant was there. It would seem weird that everyone on the canine track in the woods starts running to

---

[42] Defendant Cabe's dog was commanded to attack Plaintiff after his back was fractured in multiple places and Plaintiff suffered other contusions and injuries.

21

the Skylark motel and Defendant Rabun would just stay behind and meander in the woods. Nonetheless, even if he was not at the room at the time entry was made, Defendant Rabun still fails to establish entitlement to summary judgment for two reasons.

First, an inability to stop one incident of excessive violence does not free an officer from an obligation to prevent subsequent acts of excessive force. Under Defendant Rabun's theory, because he claims he was not a witness to the initial violation of Plaintiff's civil rights (entry into the room) and the resulting excessive force used by his co-defendants (dog attack, broken back, and other physical assaults) then he cannot be held liable for any subsequent use of excessive force by his codefendants. Subsequent excessive force included handcuffing Plaintiff, denying him medical treatment, confining him to sit on a cement wall outside his motel room and booking him into the county jail with no bond based on an illegal arrest. Defendant Rabun could have prevented Plaintiff from being illegally arrested for a non-existent crime, could have freed him from the handcuffs, and could have allowed him to obtain medical treatment. The Eleventh Circuit acknowledged the possibility of a failure to intervene claim in an unlawful arrest case if a non-arresting defendant "knew the arrest lacked any constitutional basis and yet participated in some way." Wilkerson v. Seymour, 736 F.3d 974, 980 (11th Cir. 2013) (citing Jones v. Cannon, 174 F.3d 1271 (11th Cir. 1999)).

22

Second, Defendant Rabun limits his analysis to only acts he may have witnessed. The question is not limited to what acts of excessive force did Defendant Rabun witness; the test is what acts of excessive force, was Defendant Rabun "in a position to prevent."[43] Even if Defendant Rabun did not observe the excessive force but had "an indication of the prospective use of excessive force," he may still be held liable for his nonfeasance. Riley v. Newton, 94 F.3d 632, 635 (11th Cir. 1996).

Defendant Rabun was present on the established perimeter prior to the Plaintiff's arrest. Officers on the perimeter were instructed to 'get close to the Skylark.' Defendant Rabun never claimed that he instructed officers not to go into the room, nor does he allege he did not know they were going into the room. A reasonable juror could find that Defendant Rabun would have been able to prevent his co-defendants from entering the room, from attacking Plaintiff with the dog, and from physically assaulting him and breaking his back.

A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests. These claims

---

[43] See Eleventh Circuit Pattern Jury Instructions, 5.7, arrestee, Pretrial Detainee, or Convicted Prisoner alleging Failure to Intervene. Instruction states law mandates proof of five elements. (1) Excessive force, (2) Defendant saw or knew of the excessive force would be used, (3) Defendant had an opportunity to prevent the excessive force, (4) Defendant failed to take reasonable steps to prevent the excessive force, (5)Defendant's failure caused harm.

accrue when either the seizure ends or the plaintiff is held pursuant to legal process. Williams v. Aguirre, 965 F.3d 1147, 1158 (11th Cir. 2020)(internal citations omitted). It is well-established that if no probable cause authorizes an arrest, *any* use of force to effectuate the unlawful arrest is a violation of the Fourth Amendment. Oniasse v. Hernandez, 352 F. Supp. 3d 1186, 1202 (M.D. Fla. 2018)

The Tort of false arrest was still ongoing at the time that Defendant Rabun is forced to concede that he was present at the Skylark motel.[44]

A reasonable jury could conclude that Defendant Rabun knew that Plaintiff had been illegally and falsely arrested as he sat on the wall, denied medical care, and was booked into the county jail. A reasonable jury could conclude that Defendant Rabun had a duty, and ability to intervene and failed to do so, and all force used to continue that detention, to transport him to the hospital, to take him to the jail, was excessive.

## CONCLUSION

Based on Plaintiff's Amended Complaint, the record evidence filed herein and the applicable case law, the Plaintiff, Trent Almeter, respectfully requests this Court to deny Defendant Rabun's Motion for Summary Judgment.

---

[44] Plaintiff asserts that because Rabun was involved in setting the perimeter, he would have responded to the Skylark as other law enforcement officers did when instructed to do so over the radio.

Respectfully submitted this 14 day of July 2024.

s/*Kevin Alverez*

## CERTIFICATE OF WORD LIMIT

The undersigned certifies that this document complies with the word limit set forth in Rule 7.1(F), N.D. Fla. Loc. R., and contains 5,152 words which include the headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

/s/ *Kevin Alvarez*
Kevin Alvarez

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY I caused to be emailed the foregoing on this 14th day of July 2024 to Robert B. Buchanan, Esq., with Buchanan & Buchanan, P.A, at the following email addresses: rbuchanan@rbtrial.com, cdelrosso@rbtrial.com; aperry@rbtrial.com; afountain@rbtrial.com), counsel for Defendants, William Young, Nathaniel Cabe and Matthew Rabun by using the ECF efiling system. By:

/s/Kevin Alvarez
Kevin Alvarez, B.C.S.
Board-Certified Criminal Trial Law
Florida Bar Number 88527
Law Office of Kevin Alvarez P.A.
522 East Park Ave. Suite 100
Tallahassee, Florida 32301
Phone (850) 559-0050
Fax: (850) 999-7563
KevinAlvarezesq@gmail.com

Paul M. Hawkes
Florida Bar Number: 564801
15210 Mahan Drive
Tallahassee, FL 32301
Hawkes.paul@gmail.com
Attorneys for Plaintiff Trent Almeter

25